## THE MANISTEE NATIONAL BANK v. JOHN SEYMOUR.

*Credibility and weight of testimony—Finding of jury—Charge of court—Admissions as evidence—Action on promissory note—Presumption—Burden of proof—Consideration—Accommodation indorser.*

1. Defendant gave his *individual* note for the amount of certain notes indorsed by him and discounted by plaintiff, which note was renewed from time to time, and suit finally brought by the plaintiff on the *last* renewal note. Defendant claimed that the paper taken up by him was indorsed *after* plaintiff had discounted it, and that his individual note and the renewal notes were given on the *express* agreement that he was not to be liable thereon, or on such indorsements. Plaintiff claimed to have discounted the paper in the usual course of business, and denied the *special* agreement set up by defendant. The case was tried on these adverse theories, both being fairly presented in the general charge of the court to the jury, who found a verdict for the plaintiff.

   *Held,* that the proper tribunal having passed upon the *credibility* and *weight* of the testimony, the verdict must stand. in the absence of errors in law prejudicial to the rights of the defendant.

   *Held,* further, that in considering the refusal of the court to charge as requested by the defendant, and his exceptions to certain portions of the *general* charge, the *whole* charge must be considered and construed together, and, if it fully covers the theory of the defense and the request to charge refused to be given, it is sufficient.[1]

---

[1] See *Mynning v. D., L. & N. R. R. Co.*, 59 Mich. 257 (head-note 2); *Kendrick v. Towle*, 60 Id. 364 (head-note 2); *Cicotte v. Church of St. Anne*, Id. 552 (head-note 4); *Lewis v. Rice*, 61 Id. 98 (head-note 3); *Cook v. Brown*, 62 Id. 473 (head-note 1).

:2. It is a *general* rule that all admissions not *expressly* made to make peace, and all independent facts admitted during negotiations for settlement, are admissible in evidence.

This rule was applied in a case where defendant claimed to be an *accommodation* indorser by *express* agreement with the plaintiff, and evidence was received of an offer by defendant to turn out certain stock he held in plaintiff's bank in settlement of the note ; it appearing that the offer was not made on condition that evidence of it should not be given, or under circumstances from which the judge could infer that the parties made such an agreement.

:3. Plaintiff sued defendant on his promissory note given to take up certain indorsed paper, which defendant claimed to have indorsed for the accommodation of plaintiff, *after* being discounted, and upon the express agreement that he should not be *personally* liable on such indorsements, or on the note given as aforesaid. Plaintiff denied this, and claimed to have discounted the notes in the usual course of business, relying on defendant's indorsement then appearing thereon, and that the note sued upon was given in consideration of such liability on the part of the defendant.

*Held*, that the plaintiff made a *prima facie* case by the introduction of the note and proof of defendant's signature, it not being necessary, in the first instance, to prove the actual consideration, the presumption being that the note was based upon a sufficient consideration ; and in case of indorsed commercial paper, proof of the signatures of the *maker* and *indorser* raises the like presumption, and that the indorsement was made at date of note, or, at least, before maturity, and before delivery to the holder, which presumption is sufficient *prima facie* evidence to authorize a recovery, in case the *facts* of consideration and indorsement are not disputed.

*Held*, further, that when evidence is introduced which, if believed, negatives such *prima facie* case, the burden of proof is still on the plaintiff to show such consideration and indorsement, and, if the weight of the whole evidence is equally balanced, the presumption arising from the usual course of business regarding commercial paper will turn the scale in plaintiff's favor, and entitle him to a verdict ; but if, on a fair consideration of the whole evidence, the question of consideration is left in doubt, plaintiff cannot recover.

.4. When a party having the affirmative of the issue introduces competent evidence in its support, and the adverse party, instead of offering evidence upon the facts alleged by the plaintiff, sets up another and distinct fact in avoidance, the burden of proof is upon him to establish such defense.

Error to Manistee. (Judkins, J.)    Argued October 22 and 26, 1886.    Decided January 6, 1887.

Assumpsit.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Ramsdell & Benedict* and *A. V. McAlvay*, for appellant:

Parol evidence is admissible to show that a promissory note was delivered in escrow (*Couch v. Meeker*, 2 Conn. 302), or signed, to become operative only on another person signing it (*Miller v. Gambie*, 4 Barb. 146; *Ely v. Kilborn*, 5 Denio, 514; *Awde v. Dixon*, 6 Exch. 869).

If an accommodation note made and delivered for a special purpose is used in any other way, such use is a fraudulent diversion of the note from its original object and design, and avoids it, except as against a *bona fide* purchaser:    *Brown v. Taber*, 5 Wend. 566; *Kasson v. Smith*, 8 Id. 437; *Denniston v. Bacon*, 10 Johns. 198; *Skilding v. Warren*, 15 Id. 270; *Rochester v. Taylor*, 23 Barb. 18; *Farrington v. Frankfort Bank*, 31 Id. 183; *Prall v. Hinchman*, 6 Duer, 351.

*D. S. Harley* (*Benton Hanchett*, of counsel), for plaintiff:

If the notes were discounted with defendant's indorsement on them, plaintiff can recover, and it is not competent to prove an agreement that defendant should not be holden; and such indorsement would be a sufficient consideration for the note in suit, and defendant cannot show an agreement that he should not be holden thereon:    *Adair v. Adair*, 5 Mich. 209, 210; *Jones v. Phelps*, Id. 222; *Hyde v. Tenwinkel*, 26 Id. 95; *Ortmann v. Canadian Bank*, 39 Id. 518; *Greusel v. Hubbard*, 51 Id. 95; *Allen v. Furbish*, 4 Gray, 504; *Prescott Bank v. Caverly*, 7 Id. 220; *Davis v. Randall*, 115 Mass. 547, 551; *Barnstable Savings Bank v. Ballou*, 119 Id. 487; *Martin v. Cole*, 104 U. S. 30; *Bank of U. S. v. Dunn*, 6 Peters, 59; *Charles v. Denis*, 42 Wis. 56; *Johnson v. Ramsey*, 43 N. J. L. 279; *Doolittle v. Ferry*, 20 Kan. 230; *Stack v. Beach*, 74 Ind. 571; *Day v. Thompson*, 65 Ala. 269; 2 Pars. Notes & Bills, 501; *Wood v. Surrells*, 89 Ill. 109; *Dale v. Gear*, 38 Conn. 15; *Barnard v. Gaslin*, 23 Minn. 192; *Bartlett v. Lee*, 33 Ga. 491.

The cashier had no authority to make the agreement sought to be shown:    *First National Bank v. Bennett*, 33 Mich. 523; *Bank of U. S. v. Dunn*, 6 Peters, 59, 60; *Bank of*

*Metropolis v. Jones*, 8 Id. 16; Ang. & Ames, Corp § 309; *Hodge's Ex'r v. First National Bank*, 22 Gratt. 51.

As to cashier's authority, and liability of bank for his acts, see *Farmers' & Mechanics' Bank v. Troy City Bank*, 1 Doug. 474; *U. S. v. City Bank of Columbus*, 21 How. 364; *Cochecho National Bank v. Haskell*, 51 N. H. 116; *Franklin Bank v. Steward*, 37 Me. 519; *West St. Louis Savings Bank v. Shawnee Co. Bank*, 95 U. S. 559.

As to statement to jury by judge of the tendency of the facts as evidence, if true, as bearing upon the issue in the case, see *Welch v. Ware*, 32 Mich. 83; *Beurmann v. Van Buren*, 44 Id. 498; *Demill v. Moffat*, 45 Id. 412; *Souvais v. Leavitt*, 50 Id. 111.[1]

As to legal presumption that indorsements were made before notes were discounted, see *Collins v. Gilbert*, 94 U. S. 760, 761; *Good v. Martin*, 95 Id. 93, 94; *Noxon v. De Wolf*, 10 Gray, 348; *Parker v. Tuttle*, 41 Me. 351; *Childs v. Wyman*, 44 Id. 441; *Clarke v. Johnson*, 54 Ill. 298; *Hayward v. Munger*, 14 Iowa, 518.

CHAMPLIN, J.   This suit is brought to enforce the collection of a promissory note dated April 12, 1884, payable in three months to the order of plaintiff, and signed by the defendant.   The plea was the general issue, and notice that the note was void, it having been obtained without consideration, and under an express promise from the plaintiff that it should not be enforced; that the money mentioned in said note was advanced by the plaintiff to one H. C. Tallman, and security taken therefor in the name of the defendant at the especial instance of, and for the sole benefit of, plaintiff, and with the express understanding between the plaintiff and defendant that he should not be held liable on said note,—the security being taken in the name of the defendant, and the said note given by him to the plaintiff, as a simple accommodation to the plaintiff.

Upon the trial it appeared that on October 2, 1882, H. C. Tallman made his note for $2,000, payable two months after date to the order of John Seymour, who indorsed it, and

---

[1] See *Davis v. Gerber*, 37 N. W. Rep. 281.

Tallman then procured it to be discounted by the plaintiff, and deposited the avails to his credit with plaintiff.

On October 23, 1882, Tallman made his note for $4,000, payable to the order of John Seymour, who indorsed it, and Tallman then procured it to be discounted by the First National Bank of Manistee. This note was payable two months after date, and both were to draw 10 per cent. interest after maturity. To secure Seymour for his liability upon these indorsements, Tallman executed a mortgage upon his real estate to Seymour. Defendant, Seymour, was a stockholder and a director in the Manistee National Bank, and had been since its organization. Tallman was engaged in a mixed business, —lumbering, merchandising, and real estate.

director in the Manistee National Bank, and had been since its organization. Tallman was engaged in a mixed business —lumbering, merchandising, and real estate.

At the suggestion of the cashier of the Manistee National Bank, Seymour had solicited Tallman to place his account with the Manistee National Bank, and Tallman asked the cashier what line of discount or accommodation he could obtain, and was told that he could have $10,000 upon satisfactory indorsements. Tallman suggested as indorsers a Mr. Williams and the firm of J. C. Williams & Co., druggists, of Syracuse, New York, and Tallman says that the cashier promised to look them up, and ascertain if they would be satisfactory as indorsers, and that he afterwards told him that they were all right.

The cashier denies this, and says they were suggested as indorsers, and he then and there turned to Bradstreet's Commercial Reporter, and informed Tallman that they were rated at from $20,000 to $25,000, and were apparently all right; but they lived eight or nine hundred miles from Manistee, and the bank could not take them, without an indorser there in the State. This was after the note of October 2 was discounted, and just before it matured. It was not paid at maturity, and Seymour waived protest.

Tallman went to Syracuse, New York, and from there sent to plaintiff a note for the purpose of renewing that of October 2, made by him, payable to the order of J. C. Williams, for $2,000, at 90 days, dated December 14, 1882. When this note reached the plaintiff by mail, the cashier sent a telegram to Tallman, at Syracuse, that they could not accept or use Williams' paper without Seymour's indorsement. Tallman says that he immediately sent a telegraphic dispatch to Seymour not to indorse for him. Tallman returned to Manistee from the twenty-first to the twenty-third of December. The twenty-fourth fell on Sunday, and Monday was Christmas. Tallman testifies, although he is not positive, that the $2,000 note made at Syracuse, December 14, was discounted by the plaintiff on Saturday, the twenty-third, with Williams' indorsement, in renewal of the note of October 2, and that he paid the interest on that day. His impression is that at the time it was discounted the defendant had not indorsed it.

Tallman also testifies that on the twenty-sixth day of December the plaintiff, in the regular course of business, discounted and placed to his credit another note, dated December 26, 1882, for $4,000, payable at 90 days to the order of J. C. Williams & Co., signed by Tallman and indorsed by J. C. Williams & Co., and that he is under the impression that this note was not indorsed by defendant when it was discounted.

These notes were entered upon the discount ledger of the bank on the twenty-seventh, and at that time they both bore the signature of defendant as indorser. These notes were not paid at maturity, and May 3, 1883, defendant gave his individual note for the amount of both notes, $6,066.44, at 90 days. This note was renewed from time to time, the renewal note including the accrued interest, until April 12, 1884, when the last note in renewal was given, which is the note in suit.

The defendant claims, and his testimony tended to show, that he did not indorse the Tallman notes, of dates Decem-

ber 14 and 26, until after they had been discounted by the plaintiff; and that he then indorsed them at the request of Mr. Burr, the cashier of the plaintiff, with the agreement that he should not be harmed or holden on them, and that his individual notes were given upon the faith of this original agreement; the object being, as he claimed, to enable the bank, through his indorsement of the Tallman notes, to enforce the mortgage security given by Tallman to Seymour.

Inasmuch as both Tallman and Seymour agree in saying that Tallman refused to request Seymour to indorse these notes for him, and expressly told him not to do so, it is needless to observe that the arrangement set up by defendant would lack any legal validity for accomplishing the object stated, for the reason that it would be a fraud upon Tallman's rights.

The plaintiff, however, claims that the two Tallman notes of December 14 and 26 were discounted by the plaintiff, in the usual course of business, for Tallman, with defendant's indorsement thereon, made before they were discounted, and in reliance upon his legal liability thereon as such indorser, and that there was no agreement or understanding that he should not be harmed or should not be holden on them; and that they were taken up by Seymour, and his own note given therefor, because he was liable for the payment thereof, and the several renewals of these individual notes were each and all made without any such agreement as claimed by defendant. The plaintiff's testimony tended to establish this claim.

From a review of the record it is quite apparent that there is an irreconcilable difference between the testimony of the principal witnesses to the transaction above narrated on the part of the plaintiff and defendant.   If the testimony introduced upon the part of the plaintiff is believed, the recovery is right, and ought not to be disturbed, while, on the other hand, if the testimony introduced on behalf of the defend-

ant is entitled to credence, the judgment ought to be reversed.

The proper tribunal has passed upon the credibility and weight of the testimony. The jury have found a verdict for the plaintiff, thus indicating that they relied upon the testimony introduced by the plaintiff as containing the true version of the controversy, and their verdict must stand, unless it appear that errors in law were committed upon the trial that affects the rights of the parties to their prejudice.

The assignment of errors relied upon by counsel for defendant all relate to the charge of the court to the jury, and in refusing to charge as requested by the defendant.

The first error assigned embraces a portion of the charge of the court found upon page 184 of the record; another portion found upon page 187; and a refusal to charge as requested by the defendant, found upon page 192.

The instructions complained of in the first assignment of error are as follows:

"The defendant, while admitting the execution of this note, has tendered a plea in this case that this note was given by him to the bank without consideration; and upon that score his main defense is predicated,—a total want of consideration."

Also:

"Now, this is what Mr. Seymour claims. The other side claims, in rebuttal of that theory, that these notes were discounted by the bank after this man Seymour had put his name upon the paper; that they declined and refused to discount the paper without getting some man they knew to indorse it who was reliable,—that is their claim. I will say to you right here, as matter of law, if the claim is true, the plaintiff can recover in this suit, and all other facts in the case—disputed facts—become immaterial; because, if that indorsement was made before discount by the bank, it affords a good consideration for the making of the notes afterwards, and the plaintiff can recover."

Also in refusing to charge, as requested by the defendant, as follows:

"If the cashier of the plaintiff's bank obtained the note

sued upon for a special purpose, namely, that defendant might, in case of default by Tallman, foreclose the mortgage or sue J. C. Williams & Co. at the expense of the bank, and for its sole use and benefit, it being understood that defendant himself should never be called upon to pay anything thereon, the bank is estopped from suing and maintaining a suit against Seymour on said note, and from denying the authority of the cashier in this suit; your verdict must be for defendant."

It is claimed for this assignment that the charge and refusal to charge "entirely ignore and brush out of sight the main branch of the defense," which is stated to be—

"1. That the note was void, it being obtained without consideration.

"2. In that the note was given at the instance and request of plaintiff, and for its sole benefit, for a specific purpose, under the express promise and understanding that defendant should not be personally liable."

It may be presumed that counsel for defendant meant the contract of indorsement, when he mentioned "note" in the statement above. The record shows that the testimony of the defendant explicitly states but one agreement, and that was made at the time defendant indorsed the Tallman notes. Both branches of the defense grew out of this transaction, and depend for their validity upon the asserted fact that the notes were indorsed after they were negotiated to plaintiff. Such was the defendant's theory, and such was his testimony. It was a pivotal point of his defense, and, if it was found against him, his defense fell for want of evidence to support it.

He testified that he did not indorse the Tallman notes until after they were negotiated to plaintiff, and the object and purpose to be accomplished was to give to plaintiff, by such indorsement, the benefit of the mortgage security he held from Tallman, and also that the bank might hold the Syracuse indorsers liable, and enforce such liability in his name, and, as an inducement for such indorsement, he should not be held

liable thereon, as indorser or otherwise; and that this original understanding extended to all the subsequent transactions, including the giving of his individual note, and the renewals thereof.

The errors assigned cannot be considered independently from the rest of the instructions given, but the whole charge must be considered and construed together. The court very fully and fairly presented the defendant's theory of the case, based upon the evidence introduced by him, as follows:

"Now, the defendant claims this note was given without consideration at all, and that when the same was given it was understood between the bank, through its cashier, George M. Burr, and Mr. Seymour, that in no event was Mr. Seymour to be held responsible upon this note,—that in no event would the bank look to him for the pay upon it; that this note was given in that faith, with that understanding,—with that agreement.

"He claims, in the first place, to go back awhile into the past, that H. C. Tallman, who has been a witness in this case, on October 2, 1882, executed to the bank a two thousand dollar note, payable two months after date, and on the twenty-third day of the same month he sent a four thousand dollar note to the bank. Those are the earlier notes. Mr. Seymour claims that these two notes—known as the Tallman notes, one of $2,000 and one of 4,000, given in December, 1882, and signed by Mr. Tallman and indorsed by J. C. Williams, or J. C. Williams & Co., and John Seymour—were executed first by Tallman, and afterwards indorsed by Williams, or Williams & Co., of New York, I think it was, and then taken to the bank by this man Tallman, and discounted, and that, in reality, as matter of fact, at this time the name John Seymour, as indorser upon these notes, did not appear upon the notes; that it was placed thereon afterwards, under an agreement between Mr. Burr and Mr. Seymour, whereby Mr. Burr requested him to indorse his name on them for a special purpose, as the evidence has disclosed on their theory, and that afterwards other notes were given, with the same understanding, and that this last note was given to carry out the same arrangement and understanding,—that he was not to be held upon the notes at all. That is his theory.

"Now, that is very important testimony. The theory is important, and, if true in fact, it constitutes a good defense to this suit. If those notes were not indorsed by Mr. Seymour before they were discounted, then the bank did not act upon his credit,—upon his faith as indorser; and if he afterwards signed these subsequent notes, with the understanding between him and Mr. Burr at the time he was not to be holden at all, and there was no other consideration than this previous transaction, then I charge you the plaintiff cannot recover in this suit, because there was no consideration to support it."

This portion of the charge fully covers the theory of the defense, and also substantially the request to charge embraced in the first assignment of error; but the court did not leave it there. It is true he gave instructions based upon the plaintiff's theory of the case also; but in another part of his charge he adverts to the defendant's theory again, and instructs the jury as follows:

"Of course, you will bear in mind the theory of the defendant, from first to last, that he acted on the theory that he should not be held liable at all, and he indorsed those notes after they were discounted, with the express agreement that he should not be held at all upon them, and acted in that view, from that time onward, until the final giving of the last note, which is the basis of this suit."

And in conclusion he instructs the jury, at the request of defendant's counsel, that,—

"Although as a proposition of law Tallman would not be bound by the agreement claimed to have been made between Seymour and Burr, and the mortgage security would be released thereby, notwithstanding, if the jury find the agreement was actually made as claimed by Seymour, then there was no consideration for indorsing the Williams notes."

The second assignment of error is based upon that portion of the charge of the court commenting upon the admissibility of the testimony relative to the offer made by the defendant to turn out his bank stock to apply upon the note in suit, as tending to show that he did not have any defense

to make to the note; and that if, as a matter of fact, he offered to turn his bank stock out to settle it up, it would be inconsistent with the theory of defendant that he signed them purely as accommodation indorser, after the discount.

There was no error in this portion of the charge. Defendant's counsel requested the court to instruct the jury that, if they believed in that case that the meeting held in the bank at which the above offer was made, between the directors and Mr. Seymour, was called for the purpose of arriving at a settlement of the Tallman matter, and that such was the object and purpose of the meeting, as claimed by Mr. Seymour, then the jury should not consider what was said and done, but lay it entirely aside, as not evidence in the case. This the court refused to do, and defendant's counsel duly excepted.

The testimony shows that the admission was not made upon an express condition that evidence of it was not to be given, or under circumstances from which the judge could infer that the parties agreed together that evidence of it should not be given. The general rule is that all admissions not expressly made to make peace, and all independent facts admitted during negotiations for settlement, are admissible in evidence. 1 Greenl. Ev. § 192; *Clapp v. Foster*, 34 Vt. 580; *Harrington v. Lincoln*, 4 Gray, 563; *Atwood v. Cornwall*, 28 Mich. 336.

In this case, what occurred at the meeting of the directors of July 16, when defendant was present, was gone into quite fully, and no objection was made to its introduction in evidence at the time, and no claim was made by the defendant when testifying that the admission or offers made by him were by express mention, or understood, to be without prejudice to him. We perceive no error in refusing to charge as requested.

The third and fourth assignments of error may be considered together.

The third is based upon that portion of the charge which was as follows:

"Now, gentlemen of the jury, it is very important to determine when these indorsements were made, to start on. If they were made, as the law presumes they were made, before this discounting of these notes took place, then the plaintiff in this suit is entitled to recover."

The fourth complains of the instruction which was given in these words:

"Now, then, first, you are the sworn arbitrators of the facts, and with you rests the duty and power of deciding this one question first, were those notes indorsed before discount or not? You have got to solve it from the evidence. Mr. Seymour swears he did not, and Mr. Tallman testifies in support of that theory. Mr. Burr swears they were; his book-keeper swears to the same thing; and the books tend to show it, and are offered for that purpose; and the presumption of law is, they were indorsed before."

The particular error pointed out in these portions of the instructions to the jury, is that the court makes prominent the idea that the law presumes that the indorsements were made by the defendant upon the Tallman notes prior to their being discounted by the plaintiff. It is insisted that the court stated what the law would have been had no defense been made, but was inapplicable and misleading in a case where the defendant introduced evidence which, if believed, rebutted the presumption that the indorsement was made for a consideration; in which case it is insisted that the burden of proof is still on the plaintiff to show the consideration, and his right to recover on it.

In this position we think the counsel for defendant is correct. The action in this case, being upon the note given in renewal of the individual note of defendant, which was given to take up the notes upon which his indorsements were made, was treated by both parties and the court the same as if the plaintiff had brought the action upon the contracts of indorsement.

The defendant set up want of consideration, and a special agreement to the effect that he was, in no event, to be held liable upon the notes in virtue of such indorsements. The burden of proof was upon the plaintiff to show a consideration for the note sued upon. The plaintiff made a *prima facie* case by the introduction of the note signed by the defendant. It was not necessary to prove the actual consideration in the first instance, because a presumption of fact arises, from the usual course of dealing in commercial paper, that it was based upon a good consideration; and, in case of indorsed commercial paper, when the indorsee or holder brings suit upon it, by proving the signatures of the maker and indorser a presumption arises that the note is supported by a good consideration, and that it was indorsed at the date of the note, or, at least, before maturity, and before delivery to the holder, which presumption is sufficient *prima facie* evidence to authorize a recovery, in case the fact of consideration and of indorsement before maturity is not controverted.

But when evidence is introduced which, if believed, shows a want of consideration, or that the indorsement was not made until after delivery to the holder, then the evidence arising from the presumption is rebutted, and the burden of proof is still on the plaintiff to show, to the satisfaction of the jury, a consideration, and that the note was indorsed before delivery to the holder. The jury must be able to say, from the whole evidence offered on both sides, that there was a good consideration; for, if the testimony leaves it in doubt whether there was a good consideration or not, the plaintiff fails in making out his case.

When evidence is introduced which rebuts the presumption, it disappears as evidence in the case, unless, upon consideration of the whole testimony introduced upon both sides, the weight of the evidence is equally balanced. Then the presumption arising from the usual course of business in re-

·gard to commercial paper would turn the scales in plaintiff's favor, and entitle him to a verdict.

The error of the court in these portions of his charge consists in not observing these distinctions.　He treated the presumption as still existing, and as important evidence in plaintiff's favor, although, if defendant's testimony was believed, it was wholly rebutted, and was only entitled to be considered of any weight in case the jury found that the testimony bearing upon the question was equally balanced.

The court in his instructions to the jury upon the question ·in dispute, as to whether the Tallman notes were indorsed before being discounted by the plaintiff, called particular attention to the evidence by which it was sought to be proved. He said:

. "You have got to solve it from the evidence.　Mr. Seymour swears he did not, and Mr. Tallman testifies in support ·of that theory.　Mr. Burr swears they were; his book-keeper swears to the same thing; and the books tend to show it, and are offered for that purpose; and the presumption of law is, they were indorsed before."

He did not explain to the jury that this presumption was rebuttable, and that it was only in the absence of evidence disproving the fact that courts and jurors were authorized to draw an inference, from the fact of the indorsement appearing regularly upon the notes, that they were placed there before being discounted.　It is true, he allowed evidence to disprove the fact, and called particular attention to the fact that Seymour swore that it was not so.　Notwithstanding, he told the jury that the presumption of law was still that it was so.

The fifth assignment is untenable, and is overruled.

As there must be a new trial, it may be well to notice a portion of the charge upon which no error has been assigned. The judge instructed the jury as follows:

"The burden of proof in this case is upon the defendant to show a want of consideration for the giving of this note, and the consideration is presumed in the law to have been given,

—to have been made, to have existed,—and the burden is up--
on him to show that fact by a fair preponderance of evidence-
in the case, by such proof as clearly convinces you that his
theory is founded in fact,—founded on truth. I don't say
by that the law requires him to produce more proof than the
plaintiff on that point,—more witnesses,—but the proof must.
be of that character to more clearly convince the minds of the
jury than the evidence offered on the other side."

This instruction is erroneous. Where the defense relied
upon is a want of consideration, the burden of proof is upon
the plaintiff to show consideration. The note, in the first
instance, made out a *prima facie* case in the plaintiff's favor,
and would have been sufficient, in the absence of testimony
showing a want of consideration, to warrant a recovery. The
defendant having introduced evidence to disprove or over-
come this *prima facie* case, the plaintiff still had the affirm-
ative upon that issue, and the burden of proof was through-
out upon it to establish it by a preponderance of proof;
and, if the whole evidence upon both sides left it in doubt
whether there was a good consideration or not, the plaintiff
failed in making out its case, and the defendant was entitled
to a verdict. *Paton v. Coit,* 5 Mich. 510; *Carrier v. Cameron,*
31 Id. 373; *Conley v. Winsor,* 41 Id. 253; *Pinkerton v. Bailey,*
8 Wend. 600; *Delano v. Bartlett,* 6 Cush. 364; *Burnham v.
Allen,* 1 Gray, 500; *Smith v. Edgeworth,* 3 Allen, 233; *Pow-
ers v. Russell,* 13 Pick. 69, 76.

Upon the second branch of the defense set up in the no-
tice under the plea, the burden of proof was clearly upon the
defendant; the rule being that when a party having the
affirmative of the issue introduces competent evidence in
support thereof, and the adverse party, instead of offering
evidence upon the facts alleged by the plaintiff, sets up
another and distinct fact in avoidance, then the burden of
proof is upon him to establish such defense.

The other errors assigned were waived upon the argument.
The judgment must be reversed, and a new trial granted.

The other Justices concurred.