# CATHOLIC UNIVERSITY OF AMERICA v. WAGGAMAN.

---

CORPORATIONS; PROMISSORY NOTES; LIMITATIONS OF ACTIONS; ACKNOWLEDGMENT AND NEW PROMISE; QUESTIONS OF FACT AND LAW; TRIAL; DIRECTION OF VERDICT.

1. Where promissory notes payable to the treasurer of a corporation as an individual are indorsed over to the corporation by him with a guar-

anty of payment of principal and interest, and are retained in his possession, his possession of them is the possession of the corporation.

2. Where the payee of promissory notes payable on demand has, by indorsement without date, transferred them, in an action by the indorsee against the maker, the plaintiff makes out a prima facie case by producing the notes and proving the signatures of the maker and payee, the payment of a valuable consideration for the notes and indorsement before maturity being presumed. (Citing. D. C. Code, sec. 1349, 31 Stat. at L. 1400, chap. 854.)

3. When the statute of limitations is pleaded to an action by the holder against the maker of promissory notes payable on demand, brought more than three years after their date, the burden is on the plaintiff to show either a promise in writing by the defendant to pay the notes within three years, or an acknowledgment of the notes as subsisting debts for which the defendant was liable, made within that time, or a part payment of the principal, or payment of interest within that time, or such payment by someone on his behalf, which was either authorized or subsequently ratified by him.

4. An acknowledgment of a debt sufficient to remove the bar of the statute of limitations may be inferred from facts or acts without words of express acknowledgment, as from part payment of the debt, or other clear and definite recognition of the present existence of the debt. (Following *Bean* v. *Wheatley*, 13 App. D. C. 473.)

5. It is for the court to determine what kind of promise or acknowledgment is sufficient to remove the bar of the statute of limitations; but the evidence offered to establish such promise or acknowledgment must be submitted to the jury as in other cases of fact, under the direction of the court. (Following *Bean* v. *Wheatley, supra.*)

6. In this District it is not required that there should be both an acknowledgment of a debt and a promise to pay in writing, to remove the bar of the statute of limitations, but it is sufficient if the writing be such that from it an admission of the debt as a subsisting one, and a willingness to pay, may be reasonably inferred. (Construing D. C. Code, 1271, 31 Stat. at L. 1390, chap. 854.)

7. While it is incumbent upon the plaintiff to establish a prima facie case by affirmative evidence before the defendant can be put upon his proof, yet, where the plaintiff has established a set of facts from which the jury can draw reasonable inferences tending to sustain a contention of the plaintiff, it is error for the court to direct a verdict for the defendant at the close of the plaintiff's evidence,—especially where the evidence of the defendant would of necessity be such as to illuminate the issues and aid the jury in arriving at a proper verdict.

8. The courts of review of this country are applying with increasing

strictness the rule limiting the right of the trial judge to invade the province of the jury.

9. It is only when all reasonable men can draw but one inference from the undisputed facts, that the question to be determined is one of law for the court (following *Glaria* v. *Washington Southern R. Co.* 30 App. D. C. 559); and less latitude in directing a verdict for the defendant is allowed the trial court where the direction of the verdict is sought at the close of the plaintiff's evidence, that when it is asked after all of the evidence, including that of the defendant, is in.

10. On an appeal by the plaintiff from a judgment on a verdict directed by the court at the close of the plaintiff's evidence in an action against the maker of promissory notes payable on demand, by the indorsee of the payee, where the defendant pleaded the statute of limitations, the evidence was reviewed and the judgment reversed on the ground that the evidence raised questions of fact as to whether payments by the payee of interest on the notes within the statutory period were authorized or ratified by the defendant in view of the intimate business relations which existed between them, and whether items in a claim filed by the defendant within such time in bankruptcy proceedings against the payee referred to the notes in suit, and constituted an acknowledgment of the notes as subsisting debts.

No. 1825.   Submitted November 6, 1908.   Decided January 5, 1909.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict for the defendant directed by the court, in an action on certain promissory notes.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action in assumpsit brought by appellant, the Catholic University of America, a corporation, plaintiff below, against appellee, John F. Waggaman, the defendant, to recover the sum of $78,308.94, with interest.   On various dates between May 11, 1897, and December 3, 1900, the defendant gave to one Thomas E. Waggaman twenty-two promissory notes of the aggregate face value of $78,308.94.*   These notes are substan-

---

*All of the notes were payable on demand.—REPORTER.

tially the same in form, though varying in amount. They were indorsed by Thomas E. Waggaman to the plaintiff. The language of the indorsement on each note is as follows:

Pay to the order of The Catholic University of America.
    (Signed)                         T. E. Waggaman.

It appears that none of these indorsements are dated. Following the indorsement on each of a portion of the notes, appears the following guaranty:

I hereby hold myself responsible for the within note, and guarantee the payment, principal and interest.
    March 16, 1904.                  T. E. Waggaman.

On a majority of the notes the guaranty is in the following language:

I hereby guarantee the payment of the within note, principal and interest.
    March 16, 1904.                  T. E. Waggaman.

By indorsement appearing on the back of each of the notes, it appears that the interest was paid in quarterly payments up until the summer of 1904. In the fall of 1904, Thomas E. Waggaman was adjudged a bankrupt, and, in February, 1905, plaintiff brought this suit in the supreme court of the District against the defendant, the maker of the notes, to recover judgment thereon. The plaintiff alleged, in substance, that the notes had been indorsed by Thomas E. Waggaman to it before maturity, and that said notes had been duly presented for payment, but that payment was refused. The defendant answered in three separate pleas: First, *non assumpsit;* secondly, the statute of limitations; and, thirdly, that, on the 29th day of April, 1903, Thomas E. Waggaman was indebted to the defendant in the sum of $80,000 for money loaned to the said Thomas E. Waggaman on that date, and that defendant

is willing to set off, as against the said promissory notes, so much of the said $80,000 as may equal all of the said promissory notes. It was further alleged that each of said promissory notes was indorsed and negotiated to the plaintiff more than one year after its issuance by the defendant to the said Thomas E. Waggaman; that all of said notes were indorsed and delivered to the plaintiff by the said Thomas E. Waggaman on the 15th day of April, 1902, and that the defendant had no knowledge or notice that any of said notes had been so assigned, indorsed, and negotiated until some time in the month of September, 1904. Upon the first and second pleas, the plaintiff joined issue, and demurred to the third plea on the ground that it is bad in substance. Upon hearing, this demurrer was overruled, and plaintiff filed a replication to defendant's third plea in which it denied that the notes were indorsed, transferred, and negotiated to plaintiff an unreasonable length of time after their issue, but, on the contrary, were so indorsed, transferred, and negotiated within a reasonable time after they were issued by the defendant to the said Thomas E. Waggaman; and, for a further replication to the third plea of defendant, plaintiff alleged that, long prior to the 29th of April, 1903, the date on which defendant alleged that Thomas E. Waggaman became indebted to him in the sum of $80,000, to wit, within one year after the date of the issue of each of said notes, the defendant had notice that the said Thomas E. Waggaman had indorsed, transferred, and negotiated to the plaintiff the notes described in the declaration.

At the trial, the plaintiff, for the purpose of establishing that Thomas E. Waggaman, during the period from 1897 to 1904, acted as the agent of defendant for the payment of the interest on these notes, introduced in evidence certain statements of account showing the business dealings between defendant and Thomas E. Waggaman during this period. These accounts are very voluminous, and cover more than forty pages of the printed record. They disclose the fact that the defendant, during the period between January 17, 1897, and December, 1900, as he became indebted to Thomas E. Waggaman for

moneys paid out by him for defendant and interest charges on notes, as shown by said monthly statements, executed his notes to cover this indebtedness. These are the notes sued upon in this action. The record further discloses that, between December, 1900, and August, 1904, these monthly statements indicated a balance due by defendant to Thomas E. Waggaman, but no notes were executed for the settlement of these balances. The sum total of these unsettled balances in August, 1904, was $69,708.04. This amount, as shown by the statements, consisted, in part, of interest due on the notes here in litigation, and which appear in the monthly statements by numbers corresponding to the numbers of the notes. The record further discloses that Thomas E. Waggaman was treasurer of the plaintiff corporation, and that, from the spring of 1902 until March 10, 1904, he held all the securities of the plaintiff university in his physical possession, including the notes involved in the present suit. It also appears that the credits of interest on these notes were placed there by the direction of Thomas E. Waggaman until March 10, 1904, when the plaintiff took the notes into its own possession. After that date when the interest was paid by Thomas E. Waggaman, the indorsement was made on the notes by one of plaintiff's officers. This continued until in August, 1904.

It further appears that, on August 28, 1904, the defendant filed a statement in the matter of Thomas E. Waggaman, bankrupt, wherein he admitted that he had delivered to said Thomas E. Waggaman a number of notes made by him aggregating $83,309.16, which indicated sums expended by Thomas E. Waggaman for the use of defendant and interest charged. At this point, plaintiff offered to prove by an expert accountant, who had stated the accounts of Thomas E. Waggaman, bankrupt, that he saw in the possession of the trustee of said Waggaman, bankrupt, a note for $5,000, in connection with the series of notes held by the university. This evidence was objected to by the defendant, and the objection was sustained by the court. The statement filed by defendant with the referee in bankruptcy further discloses that, on March 1, 1904, defend-

ant loaned Thomas E. Waggaman $37,000, taking his note therefor, and that, on April 29, 1903, he made him another loan of $80,000, without taking any note therefor. At the conclusion of the evidence offered by plaintiff, counsel for defendant moved the court to instruct the jury to return a verdict for defendant, which motion was granted. From the judgment entered thereon, the plaintiff prosecutes this appeal.

*Mr. George E. Hamilton, Mr. John W. Yerkes, Mr. M. J. Colbert,* and *Mr. John J. Hamilton* for the appellant.

*Mr. William F. Mattingly, Mr. J. J. Darlington,* and *Mr. Arthur Peter* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appeal is based upon the following assignments of error:
"1. That the court below erred in refusing to allow witness Theodore Cocheu, Jr., expert accountant, who stated the account of Thomas E. Waggaman, bankrupt, to testify that, in stating the accounts of said Waggaman, he discovered, in connection with the series of notes sued on, another note for $5,000 due by defendant to Thomas E. Waggaman.

"2. That the trial court erred in sustaining the motion of the defendant to instruct the jury to return a verdict for defendant and in so instructing the jury over plaintiff's objection."

The consideration of this case may be confined to the second assignment of error. Counsel for defendant attempt to uphold the action of the trial court in taking the case from the jury on two grounds. It is first contended that the burden rested upon the plaintiff to establish that it took these notes before maturity, or, being demand notes, within a reasonable time after their issue. It is insisted that the plaintiff is not such a holder in due course, and that the plea of set-off is a good defense, since the amount claimed as a set-off is greater than the amount of the notes. The notes were introduced in evidence by the plaintiff, and the signatures of the defendant and Thomas

E. Waggaman were conceded to be genuine. The notes show an indorsement by Thomas E. Waggaman to the plaintiff without date. They were shown to have been, up to March 10, 1904, in the possession of Thomas E. Waggaman, who was the treasurer of plaintiff, authorized to receive and hold securities for it. The possession of Thomas E. Waggaman, after the date of indorsement was, therefore, the possession of the plaintiff. Upon this state of facts, did the plaintiff discharge the burden resting upon it in this branch of the case? We think it did. With the introduction of the notes bearing the unchallenged signatures of the parties and the undated indorsement, the plaintiff had made such a prima facie case as called for a defense. Section 1349 of the District Code [31 Stat. at L. 1400, chap. 854] provides: "Except where an indorsement bears date after the maturity of the instrument, every negotiation is deemed prima facie to have been effected before the instrument was overdue." In *Collins* v. *Gilbert,* 94 U. S. 753, 24 L. ed. 170, Mr. Justice Clifford, delivering the opinion of the court, said: "Transferees of a negotiable instrument, such as a bill of exchange or promissory note payable subsequent to its date, hold the instrument clothed with the presumption that it was negotiated for value in the usual course of business at the time of its execution, and without notice of any equities between the prior parties to the instrument. Instruments of the kind are commercial paper in the strictest sense, and must ever be regarded as favored instruments as well on account of their negotiable quality as their universal convenience in mercantile affairs." Here, the plaintiff made a prima facie case by the introduction of the notes signed by the defendant. As said in the case of *Manistee Nat. Bank* v. *Seymour,* 64 Mich. 72, 31 N. W. 140: "It was not necessary to prove the actual consideration in the first instance, because a presumption of fact arises, from the usual course of dealing in commercial paper, that it was based upon a good consideration; and, in case of indorsed commercial paper, when the indorsee or holder brings suit upon it by proving the signatures of the maker and indorser, a presumption arises that the note is supported by a

good consideration, and that it was indorsed at the date of the note, or, at least, before maturity and before delivery to the holder, which presumption is sufficient prima facie evidence to authorize a recovery, in case the fact of consideration and of indorsement before maturity is not controverted." In the case at bar the plaintiff was entitled to rest upon these presumptions, both as to consideration and indorsement of the notes in question. With the introduction of the notes in evidence, and the admission of the genuineness of the signatures, valuable consideration and indorsement before maturity are presumed. Upon these facts, a prima facie case was made, sufficient to authorize a recovery in the absence of proof by the defendant to the contrary, and no such proof was offered. It is unnecessary for us to pass upon the question whether the defendant could, under any circumstances, assert against the plaintiff the set-off in question, since it arose out of a collateral transaction between defendant and Thomas E. Waggaman after the date he alleges in his answer the notes were indorsed to plaintiff.

A more difficult question is presented in the second ground of defense relied upon by defendant,—the bar of the statute of limitations. It is insisted that, conceding that each successive note included the interest due Thomas E. Waggaman, or paid by him to the plaintiff on the preceding notes, more than three years elapsed between the giving of the last note and the commencement of this action, and, therefore, the entire claim is barred. On the other hand, it is insisted by counsel for plaintiff that the record discloses not only payments of interest on these various notes, with the knowledge and under the direction of the defendant, up to August, 1904, but an acknowledgment of the debt by him in his sworn statement filed in the bankruptcy proceedings of Thomas E. Waggaman. The burden rested upon the plaintiff of showing either a promise in writing by the defendant to pay the notes made within three years before suit was brought, or an acknowledgment by him in writing within three years of the notes as a subsisting debt, for which he was liable; or a part payment of the principal, or a payment of interest thereon, within three years, by the defendant; or such

payment by someone on his behalf, which was either authorized: or subsequently ratified by him.

There is great conflict in the decisions of the courts of this country as to just what is sufficient to constitute such an acknowledgment as will remove the bar of the statute of limitations. In fact, each case must largely depend upon the facts therein disclosed. It would be fruitless to attempt to deduce any exact and uniform rule from the decisions. As said by this court in the case of *Bean* v. *Whealley,* 13 App. D. C. 473: "No set form of words is required to constitute an acknowledgement of the debt. Such acknowledgment may be inferred even from facts or acts, without words of express acknowledgment, as from part payment of the claim, or other clear and definite recognition of the present existence of the debt in suit. 2 Greenl. Ev. sec. 441. And in all cases it is for the court to determine what kind of promise or acknowledgment is sufficient to remove the bar of the act of limitations, though the evidence offered to establish such promise or acknowledgment of the debt is required to be submitted to the jury, as in other cases of fact, under the direction of the court." We are therefore relegated to an investigation of the record in this case to determine whether or not the plaintiff established such a case as would put the defendant upon his proof. In the inquiry to ascertain whether there was such an acknowledgment of this indebtedness by defendant, or ratification by him of the payments of interest by Thomas E. Waggaman between the years 1900 and 1904, as to remove the bar of the statute of limitations, we think the voluminous transactions between Thomas E. and John F. Waggaman will throw considerable light upon this subject. We find in the monthly statements of account appearing in the record, beginning in April, 1897, and continuing up to August 2, 1904, that the most intimate business relations existed between them. From these statements, it is apparent that Thomas E. Waggaman and the defendant were closely associated in extensive business transactions. These monthly statements of account were not confined to charges for payment of interest alone, but involved payments on real estate, payment of obligations in

banks, payment of defendant's portion of amounts due on various pieces of real estate, payment of individual notes made by defendant, payment of notes to banks, made by defendant, payment of taxes for defendant, payment of interest on notes other than the ones here in controversy, and numerous other items tending to show the close business relation existing between them. Similar items to the above appear in almost every monthly statement rendered to the defendant between April 5, 1897, and August, 2, 1904. It is further to be noted that, after December 10, 1900, when the last of the notes here in controversy was given in payment of these accounts, the balance due on each monthly account was carried forward to the account of the next succeeding month, showing, on August 2, 1904, a total balance due Thomas E. Waggaman from the defendant of $69,708.04.

Defendant, in his sworn statement filed in the bankruptcy proceedings of Thomas E. Waggaman setting forth items of indebtedness due him from Thomas E. Waggaman amounting to $267,137.98, states "that there are no set-offs or counterclaims to the same, except that this deponent has heretofore delivered to the said Thomas E. Waggaman a number of notes made by this deponent aggregating eighty-three thousand three hundred and nine and 16-100 ($83,309.16) dollars, which, according to an understanding between this deponent and said Thomas E. Waggaman, were to be held by said Thomas E. Waggaman to indicate such sums of money as the said Thomas E. Waggaman had expended for the use of this deponent. And the said Thomas E. Waggaman also claims from this deponent the sum of $78,343, mainly on account of interest charged against this deponent upon said notes delivered by this deponent to said Thomas E. Waggaman, and also on account of moneys claimed by said Thomas E. Waggaman to have been expended for this deponent's use." To this statement is attached, and sworn to by defendant a bill of particulars showing the status of the parties at the date of filing said statement, October 28, 1904. This statement was filed one month subsequent to the date on which he alleges in his answer that he had notice of

the indorsement and transfer of these notes to plaintiff. The statement is as follows:

Thos. E. Waggaman in Account with John F. Waggaman.

| | |
|---|---|
| To bills payable.............................. | $ 37,000.00 |
| To amount borrowed.......................... | 80,000.00 |
| To open account............................. | 122,925.66 |
| To amount expended.......................... | 1,956.25 |
| To amount due a/c Woodley.................. | 25,104.21 |
| To rents retained............................ | 151.86 |

| | |
|---|---|
| To bills payable................$ 83,309.16 | |
| By open account................ 78,343.00 | |
| By balance due Jno. F. Waggaman.. 105,485.82 | |

$267,137.98    $267,137.98

It will be observed that defendant states that these notes were given, and the balance of $78,343 incurred, on account of interest charged upon certain notes given to Thomas E. Waggaman and moneys expended by him for defendant's use. Inasmuch as the item of $83,309.16 constitutes all the notes appearing in this statement as issued and outstanding from John F. Waggaman to Thomas E. Waggaman, a reasonable inference might be drawn that the notes here in question constituted a large part of this sum; at least, this was a proper matter, in the absence of further explanation, to submit to the jury. If it be true that the notes here in suit were part of the notes set up by defendant as a just set-off, at a time when he admits that he knew the notes were owned and held by plaintiff, it would seem to constitute such an admission of the debt as would remove the bar of the statute of limitations. In this District (Code, sec. 1271 [31 Stat. at L. 1390, chap. 854]) it is not required, as in some jurisdictions, that there shall be both an acknowledgment of the debt and a promise to pay in writing, to remove the bar of the statute of limitations. The acknowledgment need not be in any particular form, or contain any particular substance. It is sufficient if the writing be such

that the admission of the debt as a subsisting one, and the willingness to pay, may be reasonably inferred. The acknowledgment need not be express, but may be inferred from the facts or acts of the debtor. It must, however, be distinct, unqualified, and unconditional, and must refer to a present existing debt.

It is well settled that a court will not permit a jury to draw inferences that are based upon mere presumptions. A jury may only indulge in inferences and presumptions that arise directly from the facts in the case. *United States* v. *Ross,* 92 U. S. 281, 23 L. ed. 707. It is proper to inquire what are some of the salient facts of which there is evidence in this record. We think the record clearly discloses that the interest was paid on these notes by Thomas E. Waggaman until August, 1904; that Thomas E. Waggaman continued, until August, 1904, to render monthly accounts to the defendant for the interest due on said notes; that defendant, in his statement in bankruptcy, with full knowledge of the indorsement and transfer of the notes to plaintiff, acknowledged, as a just set-off to his claims against the estate of Thomas E. Waggaman, $78,343 for interest charged against defendant and for moneys expended by Thomas E. Waggaman for defendant's use; that defendant acknowledged, as a just set-off against his claim in bankruptcy, outstanding notes to Thomas E. Waggaman for the sum of $83,309.16, representing money expended by Thomas E. Waggaman for the use of defendant; that, on April 29, 1903, defendant loaned to Thomas E. Waggaman the sum of $80,000, without taking even a note from him; and that, during all the period covered by these transactions, close and intimate business relations existed between the defendant and Thomas E. Waggaman.

We are of the opinion that this record presents an issue of fact for the jury as to whether or not the item of $83,309.16, acknowledged as a just set-off in the bankruptcy proceedings, embraced the notes here in suit; whether or not the item of $78,343, also acknowledged as a just set-off, embraced the interest paid by Thomas E. Waggaman on these notes; and

whether or not from the loan of $80,000, together with the other facts disclosed by the record showing the intimate business relations existing between defendant and Thomas E. Waggaman, defendant, knowing of the transfer of these notes to plaintiff, authorized or ratified the payment of the interest thereon. An answer to these vitally important questions is essential in order to determine whether or not defendant, knowing that plaintiff was the owner of the notes, acknowledged in his affidavit in bankruptcy the debt represented by the notes here in suit as a valid subsisting debt which he was willing to pay, and whether or not he, at the same time, ratified the payment of the interest by Thomas E. Waggaman.

In this case the indorser of the notes, Thomas E. Waggaman, is dead. The person who could throw the most light upon these transactions is the defendant. All the facts that would tend to unveil the mysterious relations between Thomas E. and John F. Waggaman are under the control of the defendant. While we recognize the rule that it is incumbent upon the plaintiff to establish a prima facie case by affirmative evidence before the defendant can be put upon his proof, yet, where the plaintiff has established a state of facts from which the jury can draw reasonable inferences tending to sustain the contention of the plaintiff, it is error for the court to dispense with the services of the jury. Especially is this true where the evidence of the defendant must, of necessity, be such as to illuminate the issues and assist the jury in arriving at a proper and just verdict.

The courts of review in this country are applying with increasing strictness the rules limiting the right of the trial judge to invade the province of the jury. This court, in the case of *Glaria* v. *Washington Southern R. Co.* 30 App. D. C. 559, said: "A motion to direct a verdict is an admission of every fact in evidence, and of every inference reasonably deducible therefrom. And the motion can be granted only when but one reasonable view can be taken of the evidence and the conclusions therefrom, and that view is utterly opposed to the plaintiff's right to recover in the case." The rule more generally followed is that "it is only where all reasonable men can draw

but one inference from the undisputed facts that the question to be determined is one of law for the court." These narrow restrictions apply where the court has before it the whole case. Even less latitude is allowed where the jury are peremptorily instructed at the conclusion of the plaintiff's affirmative case than where such an instruction is given when all the evidence of the parties is before the court.

Upon the whole, we are convinced that there is sufficient in this record to put the defendant upon his proof, and that it was error to instruct the jury peremptorily to return a verdict for the defendant. The judgment is reversed, with costs and a new trial ordered.                    *Reversed.*