*In re* McLAUGHLIN'S ESTATE.

HINCKLEY *v.* McLAUGHLIN.

BILLS AND NOTES—ESTATES OF DECEDENTS—EVIDENCE.

Upon the trial of an action in the nature of a claim against the estate of a decedent based on a non-negotiable instrument in writing whereby decedent agreed to pay claimant $10,000 on or before ten years from its date, reciting as consideration that it was given for a half interest of claimant in a patent coaster brake, and in a corporation organized to manufacture it, evidence of a sufficient consideration was not necessary to establish a case: claimant could recover without proof of an assignment or conveyance of the half interest in the patent, the instrument importing consideration: it was for defendant to show want of consideration.

MOORE, BROOKE, and STONE, JJ., concurring on the ground that the evidence tended to prove a sufficient consideration.

Error to Jackson; Parkinson, J. Submitted June 19, 1912. (Docket No. 58.) Decided December 17,

1912. Rehearing granted June 2, 1913. Former opinion affirmed March 27, 1914. Second rehearing granted. Previous opinions overruled and new trial granted March 17, 1915.

Frederick P. Hinckley presented a claim against the estate of Miar McLaughlin, deceased, which was contested by Emma McLaughlin, administratrix, and disallowed by the commissioners on claims. On appeal by claimant to the circuit court, a verdict was directed for defendant. Claimant brings error. Reversed.

*Price & Whiting,* for appellant.

*Wilson & Cobb,* for appellee.

MOORE, C. J. The claimant presented the following as a claim against the estate of Dr. McLaughlin:

"Estate of Dr. Miar McLaughlin, Deceased.
"To Fred P. Hinckley, Dr.
      "1908.
              "Aug. 10.
"Below is a copy of the note and agreement given me by Dr. Miar McLaughlin on which there is now due me the sum of $11,647.40.
                    "[Copy.]
              "JACKSON, MICH., April 12, 1902.
"I Dr. M. McLaughlin. Agree to pay F. P. Hinckley. On or befour the twelve day of April 1912 the sum of $10,000. Ten Thousand Dollers At three per cent. interest. The intest to be paid on or befour April 12 of each year. For his undived half interest in the Automic Coaster Brake. Co. Located at 102 East Washington St. Jackson Mich And all Pattents pertaining to Coaster Brakes up to this Day that has been applied for an will be applied for in United States And all Foreign Counters.
                    "DR. MIAR MCLAUGHLIN."

The case found its way to the circuit court where it was tried in May, 1911. The circuit judge directed

a verdict in favor of the defendant. The case is brought here by writ of error.

Counsel for plaintiff call the paper presented a promissory note. Counsel for the estate say it should be called an executory contract. They are both agreed that much importance attaches as to how it is to be regarded in that respect. Witnesses were called who gave testimony to the effect that the signature to the paper was in the handwriting of Dr. McLaughlin. The paper was then offered in evidence. Objection was made for the reason that it was not a promissory note and that a consideration must be proven and upon other grounds. The court held a consideration must be shown, and excluded the evidence. Mr. Hinckley, the claimant, was then called to the stand, and was permitted to testify that he wrote the body of the note upon a typewriter and that he was not accustomed to using a typewriter at the time. Some questions were asked him as to what was meant by the words "undived" and "automic," but he was not permitted to answer. The claimant then proceeded to put in other testimony.

We now quote from the brief of counsel for appellant, for it may be safely assumed, and the record bears out this assumption, that as favorable a case upon the facts will be there found as the record discloses:

"Claimant then called to the witness stand Mr. Ethan C. Adams, of Battle Creek, who was acquainted with the deceased, and had met him in the year 1902. He testified:

" 'The first time was February 28, 1902. * * * I met him at the factory of his Automatic Coaster Brake Company here in Jackson. * * * I had a talk with the doctor that day in which the Automatic Coaster Brake Company was mentioned. The doctor asked me how I liked the brake their company was putting out—that they were making—and I told him I liked it very much. * * * I was trying to get some brakes, and I

was there for that purpose. * * * Mr. Hinckley introduced me to him as his partner.'

"Witness further testified that a Mr. Keaton and Mr. Hinckley were present on this occasion, and that he (the witness) had had experience with this coaster brake. Witness also met the doctor again in Jackson on the 13th day of April, 1902, at the doctor's residence, Mr. Keaton being also present, and had substantially the same talk with him, in which the doctor asked him about the brake, and if he thought it would sell, etc. Again in October of that same year (1902) witness saw the doctor again at his residence in company with a Mr. Losey, in which conversation the doctor asked Mr. Losey and the witness 'to go on with the business where Keaton left off; go on with the manufacture of these coaster brakes and the sale of them.' Later in the fall witness had another talk with the doctor in which the witness stated that he did not want anything more to do with the coaster brake business, and the doctor replied that he was sorry. Witness also testified referring to the conversation which the doctor had with him and Mr. Losey. He testified:

" 'He stated to Mr. Losey that he owned the coaster brake business. There was something said about Mr. Hinckley in connection with it, by Mr. Losey; it was at the time he wanted Mr. Losey and I to go into the business. He wanted us to go on and see if we could organize a company. He stated he owned the business. I don't remember exactly what was said that led him to make that statement. I think Mr. Losey asked him if he would give an option on the coaster brake business, the same as he did to Mr. Keaton. There was an inquiry made about Mr. Hinckley in some way that led up to his stating that Hinckley had no interest in it. The doctor stated that Hinckley had no interest in it.'

"The doctor also made the statement to this witness and to Mr. Keaton in February, 1902, that he considered the Automatic Coaster Brake business worth 'about $20,000 or $25,000.' Witness further testified that the second time he saw the doctor in company with Mr. Keaton the doctor and Keaton were talking about establishing the American Coaster Brake Company, and proposing to sell stock and manufacture

brakes; that the persons to be interested in this company, if organized, were Mr. Badgley, Mr. Keaton, Dr. McLaughlin, and another person, whose name witness could not recall. Claimant also called Delbert Thayer, who testified that he knew Dr. McLaughlin and also Mr. Hinckley; that he had been working on some patents himself, and that some time late in the summer of 1902, or else in 1903, as near as witness could remember, he approached the doctor for the purpose of getting financial aid to develop his patents; that his conversation with the doctor took place near the back door of their factory; and that the doctor said to him that he could not help him for the reason that he bought Mr. Hinckley's interest in the brake, and had 'to give his paper.' The deposition of R. W. Losey was also taken in behalf of claimant at Indianapolis, Ind. Losey had previously done some work for this Coaster Brake Company. He testified that early in 1902 or 1903 he had a talk with the doctor at his office in Jackson; that Mr. Adams was with him; that they were trying to find out from the doctor what the exact situation was in regard to the American Coaster Brake Company, and the possibility of getting an option on their output of brakes. The witness continued:

" 'The doctor said he had bought out Mr. Hinckley's interest in the company, and thought he could make arrangements to take the output if satisfactory arrangements could be made to go ahead and manufacture the brakes. I don't remember the exact date of this conversation. I do remember it was cold and there was snow on the ground. I know it was early in the fall or spring of the year after the American Coaster Brake Company had started to sell brakes and stock. They gave me stock for my services in selling stock and brakes.' "

The paper was then offered in evidence and refused. No other testimony was offered, and, as before stated, a verdict was directed for the estate.

It is insisted by counsel (we quote from the brief) :

"It was not necessary to prove the actual consideration in the first instance, because a presumption of fact arises from the usual course of dealing in commercial paper that it was based upon a good consid-

eration; and, in case of indorsed commercial paper, when the indorsee or holder brings suit upon it by proving the signatures of the maker and indorser, a presumption arises that the note is supported by a good consideration, and that it was indorsed at the date of the note, or, at least before maturity, and before delivery to the holder, which presumption is sufficient *prima facie* evidence to authorize a recovery in case the fact of consideration and of indorsement before maturity is not controverted." *Manistee Nat. Bank* v. *Seymour,* 64 Mich. 59-72 (31 N. W. 140, 145).

Counsel cites other authorities, among them *Conrad Seipp Brewing Co.* v. *McKittrick,* 86 Mich. 191 (48 N. W. 1086), which counsel contends is strongly in favor of claimant.

Counsel say that if wrong in the first position that after their proof was in, there was a question to go to the jury upon the question of there being a consideration for the note, citing especially the case of *Taylor* v. *Taylor's Estate,* 138 Mich. 658 (101 N. W. 832). Counsel for claimant subdivide their propositions and argue them quite in detail, but we think the two heads suggested cover the questions involved. A reference to the cases cited by counsel will show them to be very different from the instant case. *Manistee Nat. Bank* v. *Seymour, supra,* was a case where counsel and the court all speak of the paper sued upon as a promissory note. In the beginning of the opinion Justice CHAMPLIN said:

"This suit is brought to enforce the collection of a promissory note dated April 12, 1884, payable in three months to the order of plaintiff, and signed by the defendant. The plea was the general issue, and notice that the note was void, it having been obtained without consideration, and under an express promise from the plaintiff that it should not be enforced; that the money mentioned in said note was advanced by the plaintiff to one H. C. Tallman, and security taken therefor in the name of the defendant at the especial

instance of, and for the sole benefit of, plaintiff, and with the express understanding between the plaintiff and defendant that he should not be held liable on said note—the security being taken in the ‘name of the defendant, and the said note given by him to the plaintiff, as a simple accommodation to the plaintiff."

The following excerpts from the opinion in *Conrad Seipp Brewing Co.* v. *McKittrick, supra,* will show it was unlike the case before us:

"The case was tried before the court without a jury, and written findings of fact and law filed, in which it was found that the plaintiff was a corporation, and that the defendant on the 20th day of April, 1888, made and executed for a valuable consideration the written instrument, a copy of which is given above; that by the delivery thereof to the plaintiff, which occurred on the 20th day of April aforesaid, defendant became liable to pay plaintiff $720, with interest at 6 per cent. after maturity; that plaintiff demanded payment after the money became payable, and the defendant refused to pay; and that there was at the time of such finding due and unpaid to plaintiff on such written instrument $801.60.   *    *    *

"In this case the action is brought by the party to the instrument to whom the promise is made.  A copy of the instrument being set out and served with the declaration, with a notice that it constituted the plaintiff's sole cause of action, it was not necessary to offer proof of its execution by defendant, as the signature was not denied under oath.  Circuit Court Rule 79. The suit was brought to recover a money demand.  The promise is to pay money, and its nonpayment constitutes the sole breach.  In such cases a recovery may be had under the common counts, and the contract is admissible in evidence under such counts.  *Port Huron, etc., R. Co.* v. *Potter,* 55 Mich. 627 (22 N. W. 70) ; *Miner* v. *O'Harrow,* 60 Mich. 91 (26 N. W. 843) ; *Phippen* v. *Morehouse,* 50 Mich. 537 (15 N. W. 895) ; *Rickey* v. *Morrison,* 69 Mich. 139 (37 N. W. 56) ; *Thomas* v. *Caulkett,* 57 Mich. 392 (24 N. W. 154, 58 Am. Rep. 369).

"No question is made that the consideration was not

proved. The admission of value received in the contract was *prima facie* sufficient to show that the promise contained in the contract had an adequate consideration to support it."

In *Taylor* v. *Taylor's Estate, supra,* the record shows that the papers presented were three promissory notes, and there was also evidence of their execution. We now quote from the language of Justice Carpenter, at page 662 of 138 Mich. (101 N. W. 833) :

"(b) We are bound, also, to say that there was evidence of consideration. It is true that the notes did not contain the recital 'for value received;' but there is evidence that they were negotiable in form, and there is a presumption that such notes, though lacking the recital just mentioned, are based upon a consideration. See *Carnwright* v. *Gray,* 127 N. Y. 92 [27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424] ; *Dean* v. *Carruth,* 108 Mass. 242."

Bearing in mind that this case was tried in 1911 and that the paper is presented by the man who says he typewrote it in the absence of the man who it is claimed afterwards signed it, if we call the words "intest" interest, the word "undived" undivided, the word "automic" automatic, and the word "counters" countries, and correct the spelling and the punctuation, we have a paper which says, in substance, that Dr. McLaughlin agrees to pay Mr. Hinckley on or before April 12, 1912, $10,000, with interest at 3 per cent., the interest to be paid on or before April 12th each year.

We now come to the consideration for the agreement:

"For his undivided half interest in the Automatic Coaster Brake Company located at 102 East Washington street, Jackson, Mich., and all patents pertaining to coaster brakes granted up to this date that have been applied for, and which will be applied for in the United States and in all foreign countries."

It will be observed that the principal sum is not due until 10 years after the date of the instrument. The paper does not purport to be given for value received. We have recited the only consideration stated. The paper indicates clearly that it was given for an undivided half interest in a business then located at a place stated, and for patents then issued, and for such as might afterwards be applied for.

What did Mr. Hinckley agree to do after this paper was made? Did he agree to sell an undivided half of the business? If so, where is the bill of sale, agreement, conveyance, or other paper in writing signed by him indicating such agreement? None was produced or offered in evidence. What patents did Mr. Hinckley sell to Dr. McLaughlin that entered into the consideration? None were produced, nor any assignments thereof to Dr. McLaughlin. If property, either a business, or patents, or both, worth $10,000, was the consideration for the giving of this paper, and the title to said property passed to Dr. McLaughlin, it is unbelievable that there would not have been produced some writing, bill of sale, conveyance, deed, patent, or patents and assignments thereof signed by Mr. Hinckley evidencing such an important transaction. We think a verdict was properly directed.

Judgment is affirmed.

STEERE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.

### ON REHEARING.

*Richard Price, George S. Law,* and *Thomas A. Lawler* (*Rollin H. Person,* of counsel), for appellant.

*Wilson & Cobb,* for appellee.

MOORE, J. An opinion was handed down in this case some time ago. It may be found *ante,* 707 (139

N. W. 50). Later upon the request of the appellant the case was reargued. The argument and a further consideration of the record has not changed our opinion as to what should be done with the case. It is affirmed.

BROOKE, STONE, and STEERE, JJ., concurred with MOORE, J.

OSTRANDER, J. (*dissenting*). I think the writing imports consideration, and that it was for the defendant to show want of consideration. The judgment should be reversed.

McALVAY, C. J., and BIRD, J., concurred with OSTRANDER, J.

### ON SECOND REHEARING.

*Rollin H. Person, Thomas A. Lawler,* and *Richard Price,* for the motion.

*Wilson & Cobb, contra.*

MOORE, J. An opinion was handed down in this case some time ago. It may be found *ante,* 707 (139 N. W. 50). Later, upon the request of the appellant, the case was reargued with the same result as before, except that it was reached by a divided court. *Ante,* 715 (146 N. W. 202). Later a rehearing was ordered upon briefs to be submitted.

The rehearing and a further consideration of the record has not changed our opinion of the character of the paper called a note, but we are inclined to the opinion that there was sufficient evidence of a consideration to carry the case to a jury. For that reason we are constrained to say the case should be reversed, and a new trial ordered.

BROOKE and STONE, JJ., concurred with MOORE, J.

STEERE, J.  I think the writing imports consideration, and that it was for the defendant to show want of consideration.

The judgment should be reversed.

McAlvay, C. J., and Ostrander and Bird, JJ., concurred with Steere, J.  Kuhn, J., did not sit.