## HENRY F. THOMAS v. PETER CAULKETT.

*Contract against public policy— Value of medical services.*

1. Money actually due under a contract is recoverable under the common counts.

2. Where it cannot be said as matter of law that a finding is not based on a special agreement of which evidence has been given, a court of review must treat it as in the case, even though a special count resting upon it has been abandoned.

3. Actual average daily receipts do not measure the value of scientific or professional services, to the extent of excluding competent opinions as to what they are worth.

4. An agreement is void as against public policy which provides that one who is bound to give his best judgment upon a question in which parties adversely interested are concerned, and who does not purport to be the agent of either, shall be paid for his services in proportion to the amount recovered by one from the other. So *held* where a doctor was employed by one who was injured in a railway accident, to explain his injuries to the management of the railroad company, on the understanding that if $1500 should be recovered for the injury, he was to have $300, and if $2000, he should get $500.

Error to Allegan.   (Arnold, J.)   June 10–11.—June 17.

ASSUMPSIT.   Defendant brings error.   Reversed.

*Thew & Latta* and *W. B. Williams* for appellant.

*Pope & Hart* and *Sidney Thomas* for appellee.   Recovery may be had on the common counts alone where the declaration counts on an express contract that has been fully performed :   *McGraw v. Sturgeon* 29 Mich. 426 ; *Fuller v. Rice* 52 Mich. 436 ; the common counts are independent of the special count, and evidence of the value of services was admissible under the common counts and the bill of particulars : *Hall v. Woodin* 35 Mich. 68 ; *Hart v. Summers* 38 Mich. 399 ; see as to the validity of the contract of employment ; *Kellogg v. Larkin* 56 Am. Dec. 169 ; *Bennett v. Clough* 1 B. & Ald. 463 ; Broom's Maxims 427 ; Chitty on Contracts 664 ; *Wellington v. Kelly* 84 N. Y. 543 ; *Wetherell v. Jones* 3 B. & Ad. 221 ; *Ohio L. Ins. Co. v. Merch. Ins. Co.* 53 Am. Dec. 742 ; Smith on Contracts 151 ;

*Thompson v. Wharton* 7 Bush 563: 3 Am. Rep. 306; *Ryan v. Martin* 16 Wis. 57; contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest: *Sedgwick v. Stanton* 14 N. Y. 289; 1 Story Eq. Jur. 259; an agreement to pay a contingent fee for professional services of a legitimate character in prosecuting a claim against the United States, pending in one of the executive departments, is not void as being in violation of public policy; *Stanton v. Embrey* 93 U. S. 548; *Bier v. Dozier* 24 Grat. 1; *Workman v. Campbell* 46 Mo. 305; *Sprye v. Porter* 7 El. & Bl. 58.

CAMPBELL, J. Plaintiff sued defendant for services in going with him from Allegan to Detroit, and giving his views about defendant's condition, arising out of injuries in a railroad accident upon the Lake Shore & Michigan Southern road. There were some further items for expenses and treatment.

The defendant considered that he had a cause of action for his injuries, and had some correspondence with the company, who would not pay him what he was willing to accept. Finally it was arranged that he should go to Detroit and confer with the counsel of the company, and, if necessary, be examined. Plaintiff was to go with him, and defendant procured a pass for both. Plaintiff had also a desire to attend a medical commencement. The parties differ in their statements concerning the terms and arrangements.

Plaintiff testified in substance that, having ascertained that defendant was willing to accept $1200, although, as both testify, he thought he ought to have $1500 or more, they had a conference, in which it was understood that if defendant received $1500 plaintiff should have $300; if $2000, $500; and in similar way for a larger sum. Plaintiff's employment was to lay the facts before the company's counsel and medical advisers. At Detroit, at plaintiff's suggestion, defendant was examined by another surgeon; and he was also examined by Dr. McLean, the company's surgeon; and a settlement was finally had upon Dr. McLean's report of the case, the amount having been reached by a reduction of defendant's demand of $2500 down to

$1500. Defendant did all the pecuniary negotiating himself, but plaintiff advised him at different times what to demand, and that he ought to have all that he asked.

The declaration contained a special count and the common counts. Such questions as arose under the special count, as such, were put out of the case by its relinquishment on trial. As the demand for compensation was for money actually due under any contract, if one existed, it was recoverable under the common counts. The verdict of the jury was for an amount which if based on the special contract must have left out items additional, which had testimony to support them. Nevertheless, we cannot say, as matter of law, that the finding may not have been based on the special agreement to which plaintiff testified. We must therefore treat it as in the case.

Upon the proof of the value of plaintiff's services, apart from any special contract, we do not see that the testimony was improper. It cannot be held, as matter of law, that the value of scientific services depends on a man's actual average daily receipts. If that were so, there could be no room for advancement. A physician's services may be worth much more than this. A jury may properly have before them all the elements which will aid them in forming a judgment, and may, where these elements are various, draw their own conclusions by comparison. The services rendered here were the description and medical interpretation of a serious and somewhat obscure injury, which, it seems likely from the testimony of the witnesses, required considerable professional skill to perceive and appreciate, and describe clearly. It appears also that the conclusions and descriptions of plaintiff corresponded with those of the other gentlemen who acted in the matter. The value of a physician's services of that kind could not very well be measured by his usual receipts in daily business to such an extent as to exclude opinions of competent men as to their worth.

The only really important question before us is whether the special contract testified to, and on which the jury may have acted, was legally valid. The testimony of defendant,

as well as of other witnesses, fails to indicate that plaintiff made any statements which were not accurate. But the contract must be measured by its tendency, and not merely by what was done to carry it out. There is no particular reason to suppose defendant got any more than he should have got. This, however, is not the test.

When we come down to the real nature of this alleged contract, it is one which contemplated that plaintiff was to give his view of the facts relating to defendant's physical condition and injuries, as they had existed and been developed under his observation, and the medical bearing of these facts, and the extent of past or future dangers and sufferings. While it is probable, from the medical testimony, that the present condition and future prospects can be got at with considerable certainty, yet it is also possible that some complications may escape detection, and some appearances may be ambiguous, unless explained by previous symptoms or conditions. Beyond this there can be no doubt that suggestions may often be made by one physician which will aid others, to whom they might not have occurred from their own experience or observation. Under these circumstances, it is at least possible, if not probable, that the judgment ultimately formed will depend very much on the facts and opinions and the coloring of the statements furnished by the person relied upon as best informed. He puts himself in a position where both parties are expected to rely upon him, and to act on what he says.

When, under such circumstances, he makes the disclosure of his knowledge and opinions the subject of a contract, whereby his compensation is to depend on the amount obtained by his employer by reason of the disclosure, it is plain that he puts himself in a position where it is his interest to exaggerate. If he were to explain to those whom he is to influence that he is acting under such an employment, and as a solicitor, then there would be nothing to put him on a different footing than other known agents. But no such explanation was contemplated, and none given. And, however honest a man's actual intentions may be, and however truth-

ful he may be, there is a direct temptation to misrepresent, and a direct danger that the misrepresentation will operate injuriously to the parties dealt with. Such secret agreements by persons putting themselves in positions of confidence come within recognized prohibitory rules' as tending to defraud. In such cases we cannot expect to find precisely analogous precedents, but the principle is familiar and of long standing. It belongs with the class of combinations to raise prices by biddings at auction, or other devices whereby the illegality is not worked out merely by success, but inheres in the transaction itself ; and with those contracts where success is dependent on personal influence and persuasion, having the appearance of disinterestedness.

Upon this point we think the court erred in not so charging the jury ; and therefore the judgment must be

Reversed, and a new trial ordered.

COOLEY, C. J. and CHAMPLIN, J. concurred.