GEORGE J. ROBINSON v. JAMES B. PATTERSON ET AL.

*Contracts—Public policy—Officers—Estoppel.*

1. Contracts in their nature calculated to influence the action of public officers, and the effect of which is to influence them one. way or the other, are against public policy, and void.

   So *held*, where *a* local commissioner on a State road made a contract (in his wife's name) with the contractor providing for the conveyance to her of certain specified lands, reserved on said State road contract, when the same should be patented by the State, and, in case of the negotiation of a sale of the said lands prior to such patenting, for an equal division of the proceeds.

2. Public policy will not permit the doctrine of estoppel to aid in validating an unexecuted contract which it holds to be void.

Appeal from Presque Isle. (Emerick, J.) Argued April 10, 1888. Decided July 11, 1888.

Bill for specific performance of contract. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Turnbull & Dafoe,* for complainant

*Bell & Adams,* for defendants.

SHERWOOD, C. J. The bill in this case is filed to obtain specific performance of a contract made between defend-

ant James B. Patterson and Frederick D. Larke, dated September 25, 1882. The contract was made in the name of Augusta Larke, on the part of Mr. Larke, and was subsequently assigned by her to complainant, as requested by her husband. Prior to the making of this contract, James B. Patterson made a contract with the State for the construction of a State road; said contract being known as "Contract No. 23 Ocqueoc Branch of the Duncan City and Alpena State Road." He located and reserved, to be received in payment for the work, about 5,000 acres of State swamp lands. The bill claims that said lands were located and reserved by said Patterson from information and minutes furnished to him of and respecting the kind, quality, condition, and worth of said lands, by Augusta Larke, in consideration of which he made an oral agreement with Augusta Larke that she should have a sufficient interest in the contract to compensate her, though the lands should be located in his name.

That, in pursuance of such oral agreement, Patterson did, on September 25, 1882, enter into a written agreement with Augusta Larke, by the terms of which he agreed to. convey to her and her assigns an equal undivided one-half interest in the said lands, being in all about 2,600 acres, situate in the county of Presque Isle; that he also agreed in said contract to convey to her the fee-simple in her undivided interest as fast as he should receive patents from the State therefor.

That said Augusta Larke, on December 19, 1882, sold and conveyed to the complainant her interest in said last-named contract, and receieved therefor from him the consideration of $2,600. The lands described in these conracts were designated as "Schedules 1 and 2."

That complainant purchased said interest with the knowledge of said James B. Patterson, and after consultation with him, and in reliance upon representations

made by said James B. Patterson and Augusta Larke that all the lands described in schedules 1, 2, and 3 had been reserved as aforesaid, upon said road contract, in the name of said Patterson, and would be patented to him; and that Patterson promised in said contract that he would do nothing to prejudice complainant's rights to the one-half of said lands, or to cast a cloud upon the title, and further assured him that the contract between him and said Larke was *bona fide;* and complainant, believing the representations of said Patterson and Larke, paid the $2,600 in the utmost good faith.

Complainant further alleges that the lands described in the first schedule, notwithstanding the representations of said J. B. Patterson, were by him reserved under said road contract last named, and located in the name of Robert Patterson, the defendant herein, and who is the father of said J. B. Patterson.

That the lands described in schedule 2 were received in the name of James B. Patterson, who subsequently, disregarding complainant's rights, transferred all the lands in schedule 2 to his father, Robert Patterson, for the purpose and with the design of cheating and defrauding complainant; and that Minor S. Newell, as Commissioner of the State Land-office, threatens to issue patents of said lands to said Robert Patterson, and complainant insists he should be restrained from so doing.

That the lands in schedule 3, at the instance and request of James B., have already been by the Commissioner patented to the said Robert Patterson; and that all these lands appear to be in the name of Robert Patterson, who has no interest therein, but he holds the same in trust for James B. Patterson,—Robert not having paid anything therefor, and taking the transfer thereof in fraud of complainant's rights; and that James B. Patterson has always retained the management and control of said lands,

and has written authority to dispose of them as he sees fit; and complainant claims and charges that James and Robert, confederating together to cheat and defraud him out of his interest in the lands in schedules 1 and 2, are now and have been offering to sell the same without respecting his rights therein.

That the said road contract has been completed and accepted by the State, and that patents will soon be issued as the said James B. Patterson may direct.

That complainant has asked the said James B. Patterson to perform, or in some manner secure the performance of, the agreement with complainant, at the same time offering to pay the amount due him under the agreement; that this the said James B. Patterson refuses to do unless complainant will buy the other undivided half of said lands, and pay an exhorbitant price therefor, viz., $16,000; and that, unless he does this, said Pattersons avow their intention to sell and place said lands entirely beyond the reach of complainant. And complainant prays that defendants may be restrained from so doing; that his rights in said property under said contract, and his interests therein, be ascertained, and especially may this be done in schedules 1 and 2; and that said defendants James B. Patterson and Robert Patterson may be decreed to convey to the complainant the undivided half interest in the lands described in said schedules 1 and 2.

The defendants James B. Patterson, Robert Patterson, and Minor S. Newell filed their several answers to complainant's bill. Augusta Larke made no answer. The defendant James B. Patterson in his answer admits the making of the contract with the State; admits that he caused to be located and reserved upon the road contract the lands mentioned in the three schedules contained in the bill, but denies that he so entered them from information furnished by Mrs. Larke; that he did receive a little

information from Mr. Larke, the husband of Mrs. Larke, in regard to a few descriptions, but that was furnished gratuitously, and was of little value, not to exceed $50; that he located the most of said lands from his own personal knowledge and examination.

He denies the making of the contract with Augusta Larke charged in the bill, or any oral agreement with her, or that he ever agreed to sell 'her a half interest in any portion of the lands; alleges that, if any contract was made, it was with her husband, Fred. D. Larke, who was the local commissioner appointed by •the State to oversee the construction of the road under the contract with the State, and to approve and accept the road when completed, and to give certificates therefor, upon which the defendant was to receive patents for the land at the land-office, and which he could not obtain without such certificates.

And the defendant, further answering, says that, about September 1, 1882, he was entitled to have a certificate for a completed portion of the road, but, before Larke would accept said portion and give the certificate, he demanded he should have an interest transferred to or secured for him in the lands, and that the defendant J. B. Patterson was thus compelled by said commissioner to sign with Augusta Larke the contract mentioned in complainant's bill before he could get his lands; and he denies that, by the terms of such contract as read to him at the time, he was to give her a half interest in the lands, but that said lands were to be patented to him, and, when sold, the proceeds were to be divided; alleges that Mrs. Larke took no part in the negotiations, but simply signed her name to the instrument when the negotiations were completed by Mr. Larke, and that even this she did at the request of Mr. Larke; that this was so done to save Mr. Larke from the charge and conse-

quences of corrupt official conduct; that the whole of said contract was void, without consideration, and against public policy, and was extorted from the defendant by the corrupt means the official position of Mr. Larke enabled him to use in committing the fraud he did upon defendant; and he asks that the whole proceeding be set aside and held for naught upon that ground.

Defendant, further answering, says he does not know what assignments have been made by Mrs. Larke of said contract, but avers that, whatever they have been, they are without consideration and voluntary, and he denies that complainant paid $2,600 for such assignment, or any other sum, or that he took it in good faith; and further denies that he ever promised said complainant that he would do nothing to prejudice complainant's interest or cloud his title under said alleged assignment, or that he ever assured or in any way conveyed the idea that said pretended agreement between Mrs. Larke and defendant was valid or made in good faith, as stated in the bill; alleges that he never had any conversation whatever with complainant upon the subject of said pretended contract; and he denies that the said Augusta Larke has now, or ever had, any legal or equitable rights in or to any of said lands; neither has said complainant; and avers that he never knew or heard of said complainant's pretended purchase until after the same was made.

Defendant, further answering, says that the lands patented to his father, Robert Patterson, were so received by him in good faith and for good consideration, and before August 28, 1882, and were his sole and absolute property, and are not held by him on any secret trust for the defendant James B. Patterson or any other person; and defendant denies all collusion and fraud, or any intention to cheat the complainant, charged in the bill.

Defendant says that Robert owns all of said lands, and he admits that he has tried to sell the same for his father, but that he has no interest therein whatever except as agent for his father in making sale thereof, and in such portion as is held by his father as security for defendant's indebtedness to him, and which is *bona fide*.

Defendant, further answering, says that he has completed said road under his contract, but cannot say whether it has all been accepted or not; and further says that the State should pay therefor by issuing patents for the land to Robert Patterson, his father, who is lawfully entitled to the same; and denies that complainant has any interest whatever in said lands.

Defendant Minor S. Newell answers, and says he is Commissioner of the State Land-office, and, as such, has the care, management, and disposal of the public lands of the State in the manner provided by law, and admits that certain swamp lands stand reserved in the name of Robert Patterson, and others in the name of J. B. Patterson; on account of a certain State road known as "Ocqueoc Branch of the Duncan City and Alpena State Road," and that certain orders are on file in his office, directing the patenting of certain of said lands to Robert Patterson and to other persons; that the court has no jurisdiction in this cause, as against the defendant, he being a State officer, and he cannot be restrained by injunction in the discharge of his duties, and can make no decree against him by which he shall be hindered, delayed, or directed in the discharge of his official duties.

Defendant Robert Patterson answers, setting up substantially the same facts as does James B. Patterson in his answer, so far as he has any knowledge upon the subject referred to; that his transactions have all been made in good faith; and that he is entitled to patents from the State for the lands he claims, and ought not to be prevented

from receiving the same by any action on the part of complainant or by the courts.

Such is the substance of the pleadings. The lands included in schedule No. 3 are not involved in this issue. The proofs were taken before a commissioner, and the cause was heard before Judge Emerick, who made a decree dismissing complainant's bill as against the Pattersons and Newell, and that they recover their costs; holding that the material facts of the complainant's bill were not sustained by the proofs, and that the contract set up in the bill, as between these parties, in which complainant claims an interest, was against public policy, and void. In these views of the learned circuit judge we fully concur. We shall not attempt a recapitulation of the evidence. We will say, however, that it discloses a state of facts which can never be looked upon with any favor in a court of equity. While the case shows the material facts set up in the bill are not sustained, it does appear from the testimony that the facts stated in the answers are in the main true. If the facts in regard to the making of the contract are not such as claimed by the Pattersons, and if it was not subject to the objection that it is against public policy, it may be very well questioned whether it presents matters within equitable cognizance.

But we pass this, and will only say, further, that the claimed contract contains provisions which are clearly against public policy, and it is therefore void. It appears from the complainant's own showing that Mr. Larke was the local commissioner of the State, and charged with an important official duty in approving of the work and accepting the job. This deprived him from taking any interest in the pay for the work which would have a tendency to prejudice the rights of the State by favoring the contractor. The interest he took, or claims to have taken, could not fail to have this tendency, and render the agree-

ment void. The taking of the interest in the wife's name is manifestly only a part of the scheme to avoid the construction the law places upon the transaction, and rather strengthens, than otherwise, the conclusion to which the circuit judge arrived; and the complainant stands in no better position than would Larke if suit had been brought in Mrs. Larke's name. Contracts in their nature calculated to influence the action of public officers, and the effect of which is to influence them one way or the other, are against public policy, and void. *Webbers v. Blunt,* 19 Wend. 188; *Winter v. Kinney,* 1 N. Y. 365; *Patton v. Nicholson,* 3 Wheat. 204; *Mitchell v. Smith,* 4 Dall. 269; *Brown v. Tarkington,* 3 Wall. 377; *Thomas v. Caulkett,* 57 Mich. 392 (24 N. W. Rep. 154); *Snyder v. Willey,* 33 Id. 483; *Whitaker v. Cone,* 2 Johns. Cas. 58; 1 Add. Cont. 387; *Richardson v. Crandall,* 48 N. Y. 348; *Gray v. Hook,* 4 Id. 449; *Bartle v. Nutt,* 4 Pet. 184; *O'Hara v. Carpenter,* 23 Mich. 410; *Eberts v. Selover,* 44 Id. 519 (7 N. W. Rep. 225); *Weber v. Weber,* 47 Id. 569 (11 N. W. Rep. 389); *Hovey v. Blanchard,* 13 N. H. 145; *Ins. Co. v. De Wolf,* 8 Pick. 56; *Knowlton v. Spring Co.,* 57 N. Y. 534.

The estoppel claimed by complainant in this case, if the facts were proved as claimed, could not have the effect sought to be attributed in this case. Public policy will not allow the doctrine of estoppel to come in, and aid in validating an unexecuted contract which it holds to be void.

The decree at the circuit must be affirmed, with costs.

CHAMPLIN, MORSE, and LONG, JJ, concurred. CAMPBELL J, did not sit.