---

## SHEPPEY v. STEVENS.

(Circuit Court. N. D. New York. January 26, 1911.)

1. CONTRACTS (§ 71*)—VALIDITY—CONSIDERATION—AGREEMENT NOT TO CONTEST WILL.

An agreement by a legatee under a will to pay money to an heir at law of the testator for forbearance of his right to contest the will rests upon a valuable consideration and is valid, and it is immaterial whether or not there were valid grounds for the contest.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 295-297; Dec. Dig. § 71.*]

2. CONTRACTS (§ 108*)—LEGALITY OF CONSIDERATION—PUBLIC POLICY.

An agreement between two of the heirs at law and next of kin of a third person of wealth, made without his knowledge or consent, that each should use his best efforts to break off improper relations existing be-

tween the third person and others which were disgraceful to himself and his relatives and also tended to lessen his estate, and that to compensate each for the services to be so rendered they should divide equally between them the amount of any legacy or legacies left to either or both by the will of the third person, is contrary to public policy and void, as tending to induce the parties to use undue influence over such third person in the making of his will and to procure the making of a will which he would not have made if he had known of the agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498–511; Dec. Dig. § 108.*]

**3. WILLS (§ 155*)—"UNDUE INFLUENCE."**

"Undue influence" is that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. § 155.*

For other definitions, see Words and Phrases, vol. 8, pp. 7166–7172; vol. 8, pp. 7823, 7824.]

At Law. Action by John V. Sheppey against Ezra H. Stevens. On demurrer to complaint. Sustained as to first count and overruled as to second.

See, also, 177 Fed. 484.

Sidney A. Hungerford and H. & W. A. Hendrickson (Geo. M. Palmer, of counsel), for plaintiff.

Fowler & Schenck (Randall J. Le Boeuf, of counsel), for defendant.

RAY, District Judge. The amended complaint presents two questions:

First. Is an agreement valid which is made by two of the heirs at law and next of kin of a living person, he having no wife, without his knowledge or consent, the one with the other, to render services and use efforts whereby certain improper and disgraceful relations of such person with others (not marital or relating to prospective marital relations), and which not only disgrace the said third person but said heirs at law and next of kin, and also deprive such third person of his money and property, if possible, are to be broken up and discontinued, or caused to be discontinued, and which services are to be paid for as follows, that if either of said parties should receive less than the other party under and by the last will and testament of said third person the one of said parties receiving the most under said last will and testament of said person would pay to the other an amount so, that the one receiving the least, or nothing, under the will of said person, on his death should be paid and receive an amount equal to one-half of the legacies devised and bequeathed by said third person by his will, if any, to the said parties making such agreement, or to either of them?

Second. Does a complaint state a cause of action which alleges that a person, the plaintiff, being one of the heirs at law and next of kin of and to a deceased person leaving a large estate and no widow or descendant, and entitled to share in such estate in case said deceased person had left no valid will, and being "prepared to contest" the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

alleged will of said deceased person on the ground that in the making of the will the testator had "been influenced" by the one named as executor and principal legatee and by others, agreed with the one named as executor in said alleged will and also as principal legatee, the defendant, that he would not contest such will on such grounds and would allow it to go to probate, the said person named as executor and principal legatee agreeing on his part that he would pay to him, the intending objector, the one-half of his legacy on the settlement of his accounts if he would not file objections and contest said alleged will on such named grounds, and which complaint also alleges that the plaintiff in execution of such agreement, and because thereof, and relying thereon, did not contest the said will, but allowed it to go to probate without objection, and that the accounts of the said executor have been settled, and that he as legatee has received his legacy but refuses to pay, as per the said agreement?

The defendant insists that the agreement first referred to is void on its face as contrary to public policy, and that the second agreement shows no valid consideration, as it does not appear the proposed contestant, plaintiff here, had any ground for making a contest, but that it appears he had no valid ground, as his proposition was to contest on the ground the defendant here, the one making the agreement to pay, and others "had influenced" the testator in making the will; there being no charge of "undue" influence. It is of course well known that "undue influence" will invalidate a will, while mere "influence" will not. Must the party proposing to contest a will in good faith, to file objections, allege good and sufficient grounds or that he proposes to object, on good and sufficient grounds, in order to make the agreement to pay money if such objections are not filed, valid and binding? Forbearance to do a thing which a party has the legal and moral right to do, and the doing of which would injure another pecuniarily or cause him trouble and expense, is usually a sufficient consideration for an agreement to pay money or for the payment of money in the absence of threats or duress. It is not alleged that this agreement was made with the defendant as executor, but with him as a principal legatee. It is not alleged that the proposed contest would in any way have affected the amount the defendant was to receive as legatee under the will. It is not alleged directly that a contest would have affected the defendant in any way. It is implied, however, that a contest would have somewhat depleted and delayed the administration and division of the estate and the payment of legacies.

In Prater v. Miller, 25 Ala. 320, 60 Am. Dec. 521, it was held that it is no valid consideration to forbear to contest the probate of a will, when there are no reasonable grounds on which to base a contest. If this be the law, it would seem that the complaint should allege that the one agreeing to forbear to contest, or to file objections and contest, had reasonable ground to contest the probate of the will. Assuming then that this defendant and others had in fact "influenced" the testator in making his will, there existed no reasonable ground for a contest, as there was no claim of the exercise of "undue influence," and this complaint does not allege that the plaintiff had reasonable grounds

upon which to base a contest of the will. But here it is alleged that the plaintiff and defendant were and are heirs at law and next of kin of the testator, and that he left no widow, father, mother, children, or lineal descendants, and "had he died intestate this plaintiff, as one of his heirs at law and next of kin, would have been entitled to a share of the real estate and personal property left by him." I think this allegation sufficient to show a particular interest of the plaintiff in the estate of the testator and a right to contest the proof and probate of his will. Those interested in its probate were compelled under the probate laws of New York to go into court, and, on notice to all heirs at law and next of kin, to show, prima facie, that the testator was of sound disposing mind and not under restraint, etc., and each and every of the heirs at law and next of kin had the right to appear and file objections and contest. This contest, if made, involved delay, expense, and possibly unpleasant disclosures. I do not think it was necessary to allege the particular relationship of the plaintiff to the testator; in other words, I do not think that in a case like this it was necessary to state the names of the brothers and sisters of the testator and the names of their children and show by such prolixity and precision of pleading that plaintiff was one of the heirs at law and next of kin to the testator. I do not think the allegation made is a mere conclusion, but the allegation of an issuable fact.

The failure to state to the defendant that the proposed contest was based on "undue influence," or would be, is not, in my judgment, fatal to the agreement to pay a sum of money as a consideration for not filing objections and contesting the will. The right to file objections and contest existed, whether or not the plaintiff had just and legal grounds on which to base the contest. It was a benefit to the defendant here, the other party to the alleged agreement, that no contest be made. It avoided delay, and the exploitation in court by evidence, or at least by the filing of allegations of "influence" in making the will used by the defendant of facts showing possible mental weakness of the testator and the exercise of influence by the defendant on the testator, and possibly by his friends and others, not pleasant to have divulged. A contest was imminent and threatened, and the defendant, the executor named in such will and also a principal legatee, had the right to prevent it if he could by the payment of money, or an agreement to pay money, in case the plaintiff would forego and abandon his right to contest and allow the will to go to probate without question. This the complaint alleges the defendant did because of and relying on the agreement of the defendant to pay money. That is, the complaint alleges full performance by the plaintiff, the forbearance and abandonment of his legal right to contest.

In New York the legality of an agreement to pay money for the forbearance of the right to contest a will which the forbearing party has the legal right to contest is well settled. Seaman v. Seaman, 12 Wend. (N. Y.) 382; Palmer v. North, 35 Barb. (N. Y.) 282; Clark v. Lyons, 38 Misc. Rep. 516, 77 N. Y. Supp. 967; Rector v. Teed, 120 N. Y. 583, 24 N. E. 1014.

In the last-mentioned case the Court of Appeals said:

"The withdrawal of the objections to probate of the will, therefore, at the special request of the defendant, was the forbearance of a legal right and constituted a consideration sufficient to support a promise by him, even if he was to receive no benefit whatever. Whether he would have succeeded in the litigation, as was said in the Seaman Case, is not the test. * * * It is enough that he yielded to his adversaries the right he possessed to contest the will. That he has done, and the compromise itself proves prima facie an acknowledgment by the defendant that there was color for his objection. The court will not ask which party would have succeeded, for that would involve the trial of the issue that was compromised and the object of the law in encouraging compromises would thus be defeated. The consideration did not rest upon any advantage to the defendant, but upon the abandonment by Thomas Wright of his position as a contestant. By discontinuing his effort to overthrow the will, he relinquished a right secured to him by law and lost his chance of inheriting the estate. He did this at the request of the defendant who promised to pay for it."

This was a case where objections had been actually filed and the litigation based thereon had commenced. But this can make no difference for the rights of a person to contest a will are substantially as sacred and valuable before the filing of objections as thereafter. The court cites and approves Seaman v. Seaman, and, Palmer v. North, supra. The court also said:

"A valuable consideration may consist of some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. (Citing cases.) It is not essential that the person to whom the consideration moves should be benefited, provided the person from whom it moves is in a legal sense injured. The injury may consist of a compromise of a disputed claim or forbearance to exercise a legal right; the alteration in position being regarded as a detriment that forms a consideration independent of the actual value of the right forborne."

These remarks of the Court of Appeals are particularly pertinent here, as they demonstrate that the forbearance of the plaintiff in this case to file objections to the probate of the will and his consent that it go to probate without contest was the abandonment of a legal right which he possessed independent of the value of that right, and independent of the question whether his grounds of proposed objections were sound or unsound.

In Clark v. Lyons, supra, it was held that the parol promise made by a legatee and devisee under his father's will to his sister, who had no benefit under the will and codicils, that he would pay her a fixed sum, provided she would not contest such will and codicils, is valid and enforceable by her against her brother, the promisor. There, as here, the promisee did not file objections and allowed the will to go to probate.

In Palmer v. North, supra, the principal beneficiary under a will agreed with the heirs of the testator orally that he would pay to each of them the sum of $200, provided they would not file objections to the probate of the will and would sign an admission of service of the citation for the probate of such will and not contest it. In that case the heirs of the testator who threatened opposition had merely complained that the will was inequitable, and they avowed their determination to oppose its probate as unjust to the three daughters. The court

held that the agreement was valid and binding and the consideration valuable and good; also, that such a compromise of itself proves prima facie an acknowledgment by defendant that there was color for the objections; also, that it is no answer to show that the objections could not have been maintained; also, that the court would not look behind the promise itself. The court further said:

"In this case there seems great propriety in the arrangement which amounted to a compromise of a family difficulty by the surrender of a substantial right given by law fraught with danger to the promisor and involving trouble and expense to the parties with possible advantage to the promisees."

In Seaman v. Seaman, supra, the heir at law had filed a notice of intention to contest the will of his ancestor. He withheld all opposition to the proving of the will and allowed it to go to probate on the promise of the devisees to pay him the sum of $500. Held, that the agreement was valid, and the court said:

"If the declaration distinctly shows that the plaintiff would have derived a benefit resulting from the avoidance of the will of his father, I think there can be no doubt that he has suffered damage or detriment, though the defendants have not received a benefit sufficient to create a good consideration. He had filed a caveat with the surrogate, and was entitled thereby to contest the validity of the will in due form of law. 1 R. L. 446, § 9; Laws of 1823, p. 63, § 3. This right, secured to him by law, he gave up in consideration of the agreement upon which the suit is brought. Whether he would have succeeded in the litigation is not the test; if this were so, there would be no security nor anything gained by compromising a doubtful or litigated claim by stipulation to be afterwards fulfilled; for then, to procure a fulfillment of it, the party would be obliged to show he gave up a right or claim which he could have enforced at law, and the old controversy must be litigated over again. It is enough that he yielded to his adversaries the right he possessed to contest the will. That he has done, and the compromise itself proves prima facie an acknowledgment by the defendants that there was color for his objections."

It is, of course, true that an agreement to forbear doing that which the party could not legally do would be without consideration. However, a party may legally, under the New York Code, file objections to the probate of a will, whether in fact he has legal grounds for opposing it or not. Undoubtedly when objections are filed they must show legal cause on their face. However, when notice is given that objections will be filed and a contest made, and an interested party agrees to pay a sum of money in consideration of a forbearance to file such objections and make such contest, and the party thereupon abandons the right, and the danger of a contest is thus ended, and the delay, trouble, and expense is avoided, we have prima facie an acknowledgment by the party promising to pay the money that there was ground for the objection and proposed contest. The omission to state to the parties interested in proving the will the full grounds of objection or a legal ground of objection does not make an agreement to pay money for abandoning the right to contest illegal or without consideration.

The demurrer to the second alleged cause of action must be overruled.

Returning to the first alleged cause of action, we find it apparent that such an agreement has a tendency to tempt the parties thereto and their friends to use influence upon the person whose actions and conduct are the subject of the agreement in the making of his will. It is not an agreement to influence him or to bring influence to bear; but, if such agreements are held valid, the tendency may be to encourage one or both of the heirs and next of kin (or more than two, if more are concerned in the agreement), who are parties to the agreement, to induce the making of a will which shall favor the one or the other, or others as the case may be, inasmuch as a large legacy to a particular one will or may pecuniarily benefit the one or ones so exercising influence whether remembered in the will or not. It cannot be said that it is contrary to public policy to agree to influence a person by lawful methods to cease disgraceful relations with women or others. Such an agreement may be, and no doubt is, commendable. But an agreement by two or more to make such efforts and compensate each other out of the legacy given to one or more by such person so operated upon, or influenced as to his conduct, or to give compensation measured by the amount of such legacy and in no other way and in no other event—the larger the legacy the larger the compensation—is quite another matter. The tendency of such an agreement as to compensation for such efforts is to encourage the use of all sorts of influence not only as to conduct, but in procuring the execution of a will favorable to the one or the other of the parties to the agreement, or to both. The agreement is not on its face in violation of any statute of the state. Influence in procuring the making of a will is not unlawful. An express agreement based on a valid consideration to make a will in a particular way, or for the benefit of a particular person, in the absence of fraud or undue influence amounting to duress in procuring such an agreement to be made, is not illegal. It is not presumed that men will do unlawful acts or unduly influence a person in making his will. Still contracts which are illegal because of their tendency to promote unlawful acts are not made lawful because of the improbability of the unlawful acts being done. Egerton v. Brownlow, 4 H. L. Cas. 1. However, contracts which give to the one party an interest in the death of the other party, or of a third person, as where the benefit to accrue to the one party is conditioned on the death of the other, are not void as against public policy. That is, unless the parties contemplate the commission of a crime. Stone v. Pennock, 31 Mo. App. 554; Krell v. Codman, 154 Mass. 454, 28 N. E. 578, 14 L. R. A. 860, 26 Am. St. Rep. 260; Conyne v. Jones, 51 Ill. App. 17; Cook v. Field, 15 Q. B. 460, 69 E. C. L. 460. In all such cases the tendency of the contract is to tempt the party to be benefited to procure the death of the other, or of the one whose death will benefit the contracting party or parties; but it is not presumed this interest will operate to produce the commission of a crime. When the contract involves the doing of some act malum prohibitum or malum in se, it is void as against public policy. Oscanyan v. Winchester, 103 U. S. 261, 26 L. Ed. 539; Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272; Leonard v. Poole, 114 N. Y. 371, 21 N. E. 707, 4 L. R. A. 728, 11 Am. St. Rep. 667; U. S. Bank

v. Owens, 2 Pet. 527, 7 L. Ed. 508; Gibbs v. Consolidated Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979.

By the terms of this agreement neither party to it was to be compensated by the other for such services as he might render and such time as he might give in its execution unless one or both should receive a legacy under the will of the third person. Compensation, therefore, was contingent on securing a legacy to the one or the other or to both. Here was an inducement, a temptation, to exercise influence, and it might be undue influence, on the person mentioned. If Sheppey, the plaintiff, received a greater legacy than Stevens, and Stevens received any legacy, then Sheppey was to compensate Stevens for his services by yielding up to him a sum of money which would make their legacies equal. So, if Stevens received a greater legacy than Sheppey, then he was to yield up to Sheppey a sum of money which would make their legacies equal. If the one received a legacy, and the other did not, then the one receiving a legacy was to compensate the other for his services by yielding up a sum of money equal to the one-half of his legacy. It cannot be denied that the tendency of this agreement was to excite both parties to efforts to influence the third person in the making of his will. The larger the legacies the greater the compensation. Compensation for the services to be performed depended upon and was measured by the size of the legacies secured, and not by the time spent, ability displayed, or value of the services. Compensation in any event was contingent upon a legacy or legacies being given by the will which the parties had in mind.

In Wellington v. Kelly et al., 84 N. Y. 543, 548, the court said:

"An agreement by a stranger to furnish evidence to substantiate a claim or defense for a compensation depending upon the success of his efforts is dangerous in its tendency, as furnishing an inducement for perjury and the subornation of witnesses. But in this case Hill was not a stranger in interest to the subject of the litigation. His antecedent relation to the mortgage made it just that he should be indemnified for the money advanced by him in case his payment should be available to Brown in the foreclosure action. The mere fact that the agreement might furnish a temptation to Hill to prevaricate or furnish false testimony does not, we think, stamp the agreement as illegal per se, and no illegal or improper intent on the part of any of the parties is disclosed by the evidence."

Before that the court had said:

"And we perceive no objection to the recovery in this case unless the rule is that every agreement made by a third person to furnish evidence in a litigation for a compensation contingent upon the event is illegal. I find no authority for so extensive a proposition."

In Lyon v. Hussey, 82 Hun (N. Y.) 15, 31 N. Y. Supp. 281, it was held that:

"A contract to furnish evidence to establish the claim of one of the parties to an action about to be commenced is against public policy and will not be enforced."

In the opinion the court said:

"It is clear that such a contract is against public policy. The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties

might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice."

In Cowles v. Rochester Folding Box Co., 81 App. Div. 414, 421, 422, 80 N. Y. Supp. 811, affirmed with opinion 179 N. Y. 87, 91, 92, 71 N. E. 468, Cowles, who had assigned certain patents to a corporation as a part of his contract with the corporation, agreed to and did become a witness for the corporation in an action brought to establish its title to the patents. The corporation agreed on its part to reassign to Cowles a one-quarter interest in all patents which Cowles assigned to the corporation. The court held:

"That the fact that Cowles, as a part of his contract with the corporation, agreed to, and did, become a witness for the corporation in the action brought to establish its title to the patents, did not constitute a consideration sufficient to support the corporation's agreement to assign to Cowles a one-quarter interest in the patents, for the reason that the corporation had a right to assume that Cowles would testify truthfully concerning the transaction, and for the further reason that the agreement to testify was contrary to public policy."

And in the opinion, citing and approving Lyon v. Hussey, supra, said:

"The agreement which it is claimed was made between the parties, although not expressed in the written contract, and which it is now urged furnishes an adequate consideration therefor, is repugnant to every instinct of propriety and justice, as it in effect provides for pay as a consideration for giving evidence in an action which it is agreed shall be brought."

If it be vicious to agree to compensate a person for obtaining or giving evidence to be used in a suit to be brought for the reason it tends to encourage subornation of perjury or false swearing, it seems to me equally vicious to enter into a contract to compensate a party for using efforts to affect the general conduct of a third person and make the compensation dependent upon the legacies or legacy given to the parties or either of them by the will of such third person. The parties to such agreement are at once placed under temptation and have an inducement to operate upon the mind of such person and play upon his passions and prejudices and excite his passions and prejudices against others who are objects of his bounty and possibly excite his passions and prejudices against one of their own number and in favor of the other. If the law sanctions such contracts as this was, it encourages the making of them and encourages the exercise of influence in the making of wills, and who is to say that such influence will stop short of undue influence? While a person may lawfully for a consideration agree with another in the open day that such other will make a will in his favor, in such case the influence is well known to and understood by the party agreeing to make his will in a certain way. In this case Sheppey and Stevens were not contracting with the knowledge or assent of the third person. Such third person was to be or might be subjected to any sort of influence and led unconsciously to make a disposition of his property by will far different from what he would have done but for the agreement and operations under the contract.

In Patterson v. Donner, 48 Cal. 369, it was held that:

"An agreement to procure witnesses to testify to a certain state of facts is immoral and against public policy."

In Goodrich v. Tenney, 144 Ill. 422, 33 N. E. 44, 19 L. R. A. 371, 36 Am. St. Rep. 459, it was held that an agreement between a person and an attorney representing the creditors of an absconding debtor that such person would procure for the attorney certain evidence to be used for the benefit of the creditors, and for which such person was to be paid 25 per cent. of the debt collected, was contrary to public policy and illegal and void for that reason.

In Thomas v. Caulkett, 57 Mich. 392, 24 N. W. 154, 58 Am. Rep. 369, it was held that:

"An agreement is void as against public policy which provides that one who is bound to give his best judgment upon a question in which parties adversely interested are concerned, and who does not purport to be the agent of either, shall be paid for his services in proportion to the amount recovered by one from the other."

The court said:

"The testimony of defendant as well as .of other witnesses fails to indicate that plaintiff made any statements which were not accurate. But the contract must be measured by its tendency, and not merely by what was done to carry it out. There is no particular reason to suppose defendant got any more than he should have got. This, however, is not the test. * * * When under such circumstances, he makes the disclosure of his knowledge and opinions the subject of a contract whereby his compensation is to depend on the amount obtained by his employer by reason of the disclosure, it is plain that he puts himself in a position where it is his interest to exaggerate."

The cases to which attention has been called, where compensation was contingent in whole or in part on the success or amount of recovery, seem to hinge largely on the inducement of the contract to exaggerate in giving testimony, or manufacture testimony, or suborn witnesses. It would be a crime to do either, and hence, it may be said, the tendency of such an agreement would be to encourage the commission of a crime contrary to and in violation of the public policy of the state. Public policy does not, as we have seen, condemn the use of mere influence upon a person in the making of his will. The public policy of the state condemns only the exercise of what the law calls "undue influence," and undue influence has been defined "as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist." Schouler on Wills, 230, § 227; Turner v. Cheesman, 15 N. J. Eq. 243; Gardiner v. Gardiner, 34 N. Y. 155; 1 Redf. 249. Speaking of the acts which will constitute undue influence, the author says, quoting Lord Cranworth:

"It is sufficient to say that, allowing a fair latitude of construction, they must range themselves under one or other of these heads—coercion or fraud."

And he adds:

"In short the undue influence which vitiates the testament has always something sinister, corrupt, and selfish about it, when properly viewed,

however sly and secret in its workings, or varnished over with hypocrisy, and hence difficult to be traced except in the effect it has produced."

Such influence the law condemns. An agreement to do such acts in the manner referred to would, of course, be illegal and not enforceable. Is not an agreement, the tendency of which is to induce or tempt the parties to do such acts, or cause them to be done, equally contrary to public policy and void? It is plain that the plaintiff and defendant were to work secretly so far as the third person was concerned. It is also plain that each had a selfish interest to serve in executing their agreement. Neither was prompted, solely at least, by a desire to promote the good of the third person, their relative, and save him and themselves from disgrace and his property from waste and dissipation. They voluntarily introduced into it a selfish motive and purpose or interest by way of money recompense to be derived from the property of the third person mentioned without his knowledge or assent, and it might be contrary to his wishes. Of course, the legacy once given and vested in the legatee, it became his property, and it was allowable for him to dispose of it as he pleased. This the person making the will well knew; but it may well be doubted that he would have given a large legacy to Stevens had he known of this agreement between Sheppey and Stevens. Such agreements, if sanctioned and enforced by the courts, tend to encourage subtle interference by relatives or even strangers with the everyday life and conduct of men of property.

It seems to me the only safe rule is to condemn such contracts when the compensation for services rendered in their execution is made contingent on the giving of a legacy by the third person who is to be influenced as to his life and conduct by the contracting parties, to one or both the parties to it. To make a contract void as contrary to public policy, it is not necessary to show that the parties thereto contemplated the doing of some illegal or immoral act, or that any person has suffered an injury. It would seem to me that contracts by two or more to intermeddle with the affairs, private life, or business interests or property rights of a third person without his knowledge, and compensate each other for services in that regard by an equal division in effect of whatever may come to them from such third person by way of gift or will, any compensation whatever being contingent on such a gift or will, are dangerous and mischievous in their tendencies in several aspects, and are void and not enforceable, whether we regard them as contrary to public policy or as a fraud upon such third persons. If A. and B., the sons of C., who is old and feeble and has other children, objects of his bounty, find him surrounded by and entangled with evil associates who are disgracing both C. and his family and wasting his property, it is not only most commendable, but their moral duty, to interfere in all proper ways and disentangle and protect the father. In such case it would also be perfectly proper and legal for A. and B. to agree between themselves that the one would compensate the other for money expended and time spent in such work so they would bear the burden equally. But suppose they step aside from such an agreement as to compensation, or arrangement for equalizing the burden, and agree that there shall be no compensation whatever, no equalizing of the burden, unless the father shall give them, or one of them, by his

will, a devise or legacy, or both, and that then, in that event, they will divide equally what is given to one, if there be a gift to one only, or the sum of what is given to both, if both are remembered. Here we have a departure by A. and B. from the commendable object of rescuing the father from evil influences and bearing the burden equally from their own means, and the substitution of a bargain for an equal interest in the father's bounty to the one or to both, regardless of his wishes and last will, and a bargain or contract which at once incites the parties to the contract to secure the largest possible devise or legacy from the father to one or to both. The one party may now influence the father to make an unequal division for the benefit of the other party to the agreement to the detriment of the other children, without the slightest danger of impairing his own ultimate share in the estate, but, on the other hand, with the hope and expectation of augmenting it. I think the direct tendency of such agreements as to compensation is to promote and encourage the exercise of undue influence in the making of wills, imposition upon men of means, the creation of family dissensions and quarrels, and contests and litigations in court over the estates of deceased persons, and that such contracts are void as contrary to public policy.

The demurrer to the first cause of action is sustained.