JESSIE F. RAYMOND v. THE ESTATE OF FREDERICK WOOLFENDEN.

*Estates of deceased persons—Claims—Instructions to jury.*

It is reversible error for the trial judge to use language in his charge to the jury naturally tending to influence them against the allowance of plaintiff's claim, if they understand, as is quite possibly the case, that its purpose is to show that it is doubtful if the arrangement under which the plaintiff testifies the claim arose was ever made.

Error to Wayne. (Brevoort, J.) Argued November 23, 1893. Decided February 27, 1894.

Appeal from the disallowance of claims in probate court. Claimant brings error. Reversed. The facts are stated in the opinion.

*Charles T. King* (*Moores & Goff,* of counsel), for appellant.

*Harlow P. Davock* (*E. F. Bacon,* of counsel), for defendant.

LONG, J. Claimant filed three claims against this

estate. They were disallowed by the commissioners on claims, and on appeal were disallowed by the jury. Only two of the claims are insisted upon here:

First, it is claimed that in 1887 claimant held a contract in writing from Dr. Lyster, of Detroit, for the purchase of certain lands at $30 a foot front, the contract amounting at that price to $7,080. She had paid $50 down, when, by the advice of Mr. Woolfenden, she released her contract, and permitted her vendor to make a contract with William T. De Graff. Under this contract it is claimed that Mr. Woolfenden was to share with De Graff, and that they were to pay to Dr. Lyster $30 a foot front, the same as claimant was to pay; but the land was to cost De Graff and Woolfenden $32 a foot front, or $472 more than Dr. Lyster was getting, which was to be given to claimant as compensation for releasing her contract. On the trial in the circuit court the claimant sought to make proof of this arrangement.

Mr. De Graff was called as a witness for the claimant, and testified that in the latter part of 1887 he and Mr. Woolfenden agreed orally to purchase some lots on Farnsworth street from Dr. Lyster at $32 a foot front. The land had a frontage of 236 feet. They were to pay in equal shares, and the first payment was to be $2,052. He paid Mr. Woolfenden his share, $1,026, at the time the contract was made. The contract was made to Mr. De Graff at the suggestion of Mr. Woolfenden, who did all the business. A deed was afterwards given by Dr. Lyster to De Graff and Woolfenden. Witness knew nothing about claimant in the transaction. In connection with this testimony, claimant offered the De Graff contract and the deed in evidence. The contract shows that the purchase was made by De Graff, and the deed conveys the premises to De Graff and Woolfenden. Two letters were also offered in evidence,—one from Mr. Woolfenden to Dr.

Lyster, asking if he would consent to Mrs. Raymond's assigning her contract to other parties, and the other from Mrs. Raymond to Dr. Lyster, authorizing him to make a contract with De Graff, and stating she had sold and assigned all her interest in the property to him. This last letter was signed by Mr. Woolfenden as agent for Mrs. Raymond. The contract to De Graff and the deed to De Graff and Woolfenden each show a consideration of $7,080. Mr. Sibley testified that he was the attorney for Dr. Lyster, and drew all these papers under the direction of Mr. Woolfenden.

Mrs. Raymond, the claimant, was called as a witness in her own behalf, and testified that she made a contract with Mr. McLaughlin for the purchase of certain lots on Farnsworth street in 1887; that the contract was in writing, and signed by Mr. McLaughlin; that, the last she knew of the contract, it was with Mr. Woolfenden's papers; that all her papers were with Mr. Woolfenden's papers; that she had made diligent search for the contract, but was unable to find it; that she had asked for the papers, but they had not been turned over. Witness was then asked to state the contents of the paper. This was objected to on the ground that the loss of the paper had not been proved, and that, if it existed, that fact was as well known to Mr. Woolfenden as to the witness. The court held the testimony incompetent, saying that the witness was a party in interest. Proof was then made of a demand upon the attorneys for the estate for the paper, but they denied having it.

Mr. McLaughlin was called as a witness for claimant, and testified that in 1887 he made a contract for Dr. Lyster, to claimant, for these lands, at $30 a foot front for 236 feet frontage on Farnsworth street; that the first payment was to be $1,580, and a receipt was given for $50. Claimant was then recalled, and testified, without objec-

tion, that when she bought the Farnsworth-street property she went to Mr. McLaughlin's office, and paid him $50 down on the contract; that she never personally met Mr. De Graff, or received any money from him or any one else, in behalf of Mr. Woolfenden, for the sale of her interest in that property; and that she had received no benefit for her consent to Dr. Lyster to make the contract with De Graff.

This is substantially all the testimony given by claimant on the first claim, and, upon this evidence, counsel for her asked the court to charge the jury that if they found "that the claimant, Mrs. Raymond, sold to Mr. Woolfenden and De Graff, or released, for their benefit, at their request, all of her interest in the Farnsworth-street property, for the sum of $472, or $2 per foot, then she is entitled to recover said purchase price, unless the defendant estate has shown by a preponderance of testimony that she has been paid therefor." The court, in its general charge, after detailing the circumstances of the transfer of this property, said:

"Now, gentlemen, has this lady satisfied you by a preponderance of evidence that there is anything coming to her on this assignment of this property? With that I have nothing to do. That is entirely for you to say."

In some other parts of the charge the court referred to this particular claim, making the following remarks, upon which error is assigned:

"There is one thing you must not lose sight of: Mrs. Raymond did not ever get a deed for this property, and we do not know of any reason why she never fulfilled it. It might be possible she wanted to lose her $50."

Also:

"I do not believe there is one in this court-room knows why she did not accept that deed. She did not tell us why,—not a single word about it."

It is difficult to understand just what the language referred to means. It is not contended that she ever got a deed, or expected to get one. She claimed to have assigned her contract, or to have released it, and consented that a contract should be made to De Graff, and that for so doing she was to receive $472. These remarks would naturally tend to influence the jury against the allowance of the claim, if they understood that the court was making such statements to show that it was doubtful if the arrangement she claims was ever made, and it is quite possible they might so have understood. The court should have given the request to charge. It appears from the claimant's testimony that she has never been repaid even the $50 paid down by her; and further, from all the testimony on her part, it is shown that this extra two dollars per foot front which De Graff paid over to Mr. Woolfenden has not been paid to her.

The other claim set up relates to other property sold by claimant, a part of the proceeds from which, she alleges, came into the hands of the deceased. This question was fully gone into on the trial, and payments shown from deceased to the claimant; the defense claiming that whatever moneys came into deceased's hands, belonging to claimant, he had paid over to her. The whole subject of the amount of moneys coming into his hands, and the amount of payments, was submitted to the jury, and they found adversely to the claimant. We find no error in this part of the case.

Judgment reversed, and new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.