*In re* McLAUGHLIN'S ESTATE.

HINCKLEY *v.* McLAUGHLIN.

1. TRIAL—CONDUCT OF COURT—REMARKS OF COURT.

In an action against an estate on a promissory note, in excluding testimony of plaintiff, remarks by the court that he was inclined to think counsel was attempting to get around the rule excluding evidence equally within the knowledge of deceased, *held*, not erroneous as tending to discredit counsel in the eyes of the jury.

2. SAME — EVIDENCE — WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

It was not error for the court to exclude testimony admitted by counsel to be equally within the knowledge of deceased.

3. SAME—INSTRUCTIONS.

Where the charge of the court, taken as a whole, fully protected the rights of plaintiff and fairly presented the controlling issues for determination by the jury, there was no reversible error.

Error to Jackson; Parkinson, J.  Submitted April 19, 1918.  (Docket No. 24.)  Decided June 3, 1918.

Frederick P. Hinckley presented a claim against the estate of Miar McLaughlin, deceased, for an amount due on an alleged note.  The claim was disallowed by the commissioners and claimant appealed to the circuit court.  Judgment for defendant.  Plaintiff brings error.  Affirmed.

*Reece, Blackman & McGraw,* for appellant.

*W. S. Cobb,* for appellee.

BROOKE, J.  Reference is made to 182 Mich. 707, where this case will be found reported upon its first appearance in this court.  After the opinion was writ-

ten the case was reargued on the application of the plaintiff, appellant, and was reaffirmed, however, by a divided court. A second rehearing upon briefs was had and the case was reversed, three of the Justices being of opinion that there was sufficient evidence of consideration in the record to carry the case to the jury and four being of opinion that the paper itself imported consideration, and that the burden of showing want thereof rested upon the defendant estate. Another trial has been had at which considerable testimony was introduced on behalf of both parties. The question was submitted to the jury who returned a verdict in favor of the estate and judgment was entered thereon. The plaintiff again reviews the matter in this court and argues the case under three heads as follows:

(1) Conduct and statements of the court.
(2) Rulings on admission and rejection of evidence.
(3) The charge.

1. Under this head counsel for appellant under twelve several assignments of error claims that the court by his conduct and utterances plainly intimated to the jury a mental attitude adverse to the position of the plaintiff and favorable to that of the defendant estate. In support of plaintiff's position in this respect several cases are cited, among them the following: *McDuff* v. *Journal Co.*, 84 Mich. 1; *Raymond* v. *Woolfenden's Estate,* 99 Mich. 165; *Williams* v. *City of West Bay City,* 119 Mich. 395; *In re Stockdale's Estate,* 157 Mich. 593. Counsel's grievance in this respect is based upon isolated utterances of the learned circuit judge, for the most part taken from extended colloquies between the court and counsel for both parties had with reference to the admission or exclusion of testimony. We have read this entire record with great care and conclude without hesitation that when the alleged objectionable remarks are read in connec-

tion with all that was said by the court in the course of the trial there is no just ground for this claim of counsel which goes to the length of impugning the integrity of the court.

2. Counsel for plaintiff asked him while on the stand the following question:

"*Q.* You may state what interest you had—what you owned in the patents excepting the Hinckley and McDevitt patent on the date of this Exhibit A.

"*Mr. Cobb:* The same objection.

"*The Court:* I think I will overrule the objection.

"*A.* I owned a half interest in all patents.

"*Q.* Now, bearing in mind that the date of Exhibit A is April 12, 1902, you may state what interest you had or owned in any of these patents or inventions during the remainder of the year 1902."

Objection was made to the question asked above and a very extended argument between the court and counsel followed. The objection was finally sustained, the court saying in part:

"Now, then, while in form you are not asking for what occurred between him and McLaughlin, you are asking him for a piece of evidence which as a matter of fact must have been equally within the knowledge of Dr. McLaughlin. Death has sealed the lips of Dr. McLaughlin, and the law says the other party to the transaction must have his lips sealed, that they must be placed upon an equality. I am inclined to think you are attempting to get around the statutory rule made for the protection of a man after he has passed on into the other life. I shall sustain the objection to this question."

The correctness of the ruling is not seriously questioned by counsel for appellant, but it is urged that the remarks of the court tended to discredit him in the eyes of the jury. A reading of the entire colloquy convinces us that neither its purpose nor effect was as claimed by counsel for appellant. The court closed the matter by saying:

"I am not assuming to state that any disputed matter in this case is true one way or the other, but in response to the question of Mr. Badgley I merely sought to illustrate what the other side might claim and probably would argue to you. I am expressing no opinion about it or the force of any such claim when they are made because you are the sole judges of the facts and I have nothing to do with the facts at all."

Error is assigned upon the refusal of the court to permit plaintiff while on the stand to give testimony touching the consideration in the instrument sued upon and explaining the receipt introduced by the defendant estate. An extended offer of this evidence was made by counsel for plaintiff. At the end of said offer the following occurred:

"*The Court:* You offer to make that by Mr. Hinckley?

"*Mr. Lawler:* I am asking to prove it by Mr. Hinckley, and for this reason, because by the introduction of these documents which are nothing more or less than admissions over the signature of Mr. Hinckley, and I offer to prove it by Mr. Hinckley, he being the only witness who can prove it, and second, because by the introduction of these admissions they have waived the rule.

"*The Court:* All that you expect to prove must have been known to Dr. McLaughlin.

"*Mr. Lawler:* That's all very true, but I submit in this case, in view of their introduction of these documents they have waived the rule.

"*The Court:* I feel very confident you are not entitled to it. If you can show me by authority that you are, I will yield to the authority, of course."

We are of opinion that counsel having admitted that the testimony about to be elicited from plaintiff was equally within the knowledge of the deceased, the action of the court was not erroneous.

3. The first 18 assignments of error are based upon alleged erroneous instructions to the jury. In order

to judge of the propriety of all that was said by the court below in instructing the jury it is necessary to consider the situation presented at the close of the proofs. The instrument upon which plaintiff's claim is predicated, itself, bears intrinsic evidence which at once challenges attention even though it does not arouse suspicion as to its genuineness. It purports to have been made by a man of some considerable property, of business experience and education. At the time of its date the alleged maker was somewhat advanced in years and was partially blind. The paper itself which was typewritten is illy spelled and of doubtful significance. The signature of the alleged maker is placed at a distance (claimed by counsel for appellee to be very unusual) below the printed matter. If, as was held by a majority of this court, the instrument itself imports consideration, that consideration is the undivided one-half interest in the Automatic Coaster Brake Company and all patents pertaining to coaster brakes, which interest up to that time belonged to the plaintiff. By an instrument introduced in evidence by the defendant it appears that on the 15th day of April, 1902, three days after the date of the instrument in suit, Miar McLaughlin and Frederick P. Hinckley entered into a contract with one Forrest Keaton by the terms of which McLaughlin and Hinckley agreed to operate the factory and produce coaster brakes and Keaton agreed to sell the same. The profits arising from said operation to be equally divided among the three parties. The first recitation in said contract is as follows:

"Whereas, said McLaughlin and Hinckley are the owners of certain letters patent covering a certain invention, and of a certain invention known as a bicycle coaster and brake, and are the owners of a large amount of machinery and tools purchased by them for use in the manufacture of said coaster and brake, and have on hand at the present time certain parts of

said coaster brake and certain material purchased for use in the manufacture of the same."

Inasmuch as plaintiff claims to have sold his interest to Miar McLaughlin three days before the execution of this instrument it is rather significant that in said instrument he should describe himself as the part owner with McLaughlin of the letters patent and the machinery and tools. By another instrument bearing date August 9, 1902, Miar McLaughlin and plaintiff Hinckley entered into an option contract with said Keaton by the terms of which they agreed to sell:

"All property used by us in connection with the manufacture and sale of coaster brake hubs including hubs in whole or part and stock on hand together with letters patent Serial No. 59,635 granted Feb. 19th, 1902, and all patentable features pertaining to this brake up to date, and with all title and interest (which is to be unincumbered and free from debt) in and to said property with the exception of hubs completed before Sept. 1st, 1902, above mentioned and including the good will of existing business upon payment to us of fifteen thousand ($15,000) dollars at any time on or before the 15th day of September, 1902."

A further agreement was made between the same parties on the 18th day of August, 1902, which follows:

"This agreement made this 18th day of August, 1902, by and between Miar McLaughlin and Fred P. Hinckley of Jackson, Mich., owners of all interests in the Automatic Coaster Brake Company of same place, as parties of the first part, and F. M. Keaton of Chicago, Ill., as party of the second part, do hereby agree as follows:

"Witnesseth, that whereas the said parties of the second part, now holds an option on said property belonging to parties of the first part, to buy said property. Now then parties of the first part do hereby agree that they shall pay to party of the second part one-third (1-3) of all money or value received over and above Twelve Thousands ($12,000) Dollars for

said property less $100 to be paid to said Dr. Miar McLaughlin.

"In witness whereof the parties hereto have signed their names and affixed their seals the day and date first above mentioned.

"MIAR MCLAUGHLIN,
"F. P. HINCKLEY,

"(True Copy), F. M. KEATON."

On the 15th day of September, 1902, an agreement was entered into between the same parties in which it is recited:

"Whereas parties of the first part own and control a certain invention known as a bicycle coaster and brake, which said invention is protected by United States government letters patent No. 59,635, granted February 19th, 1902, and whereas said McLaughlin and Hinckley are owners either jointly or separately of certain machinery and equipment used in the manufacture and sale of said invention."

All these contracts were entered into after the date of the paper in question and three of them several months thereafter. Approximately four years later, upon April 24, 1906, the plaintiff executed the following receipt:

"JACKSON, MICH., April 24, 1906.

"Received of Dr. Miar McLaughlin the sum of Fourteen Hundred and One Dollars and Fifty Cents in full of all demands and dues of every kind and nature to date.                    F. P. HINCKLEY."

It is also in evidence that on May 26, 1904, at a time when there was $600 interest due upon the paper in question, plaintiff gave a mortgage on his property for $500 with interest at six per cent. The court, as he was bound to do under our former determination, charged the jury that the instrument on its face imported consideration and that they should first determine whether the Doctor ever made and delivered the so-called note, weighing all the evidence bearing upon

the question. With reference to the receipt he charged the jury that it was—

"not conclusive of payment of the note in question, but that it is open to explanation; that is not binding upon the claimant, Hinckley, if you shall find it was executed as a result of a mistake, or was procured by fraud, or if you shall find that it was not intended as a settlement in full of all claims between the claimant, Hinckley, and Miar McLaughlin, deceased, including the note in question, marked Exhibit 'A.' "

He further charged:

"But where any question is disputed, and there is testimony on one side and testimony on the other, it is then the function of the jury to decide that dispute.

"The judgment of the jury must be an independent one, based on the law and evidence in the case and not in any way upon any notion or inference or supposition as to what the opinion of the court might be in reference to the merits of the case, or whether the court has any opinion. I have not intended to say anything which might be in any way construed, interpreted or inferred as any opinion or notion of mine as to the matters here in dispute. * * *

"Now, gentlemen, you should look to all the evidence and all the facts and all the circumstances surrounding the dealings of these parties, one with the other, and their relations one to the other, and the arguments of counsel on both sides of the controversy, and determine from the evidence in the case what the truth is as to the claims of the parties herein."

Reading the entire charge which was a lengthy one, we are well satisfied that the rights of the plaintiff were fully protected and that the controlling issues were fairly presented to the jury for determination. We find no reversible error.

Judgment affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.